No. 26-2267

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

_____

GLENDA JOHNSON, *et al.*,
*Plaintiffs*

v.

SMITHKLINE BEECHAM CORPORATION, *et al.*,
*Defendants*

_____

**On Appeal from the U.S. District Court
for the Eastern District of Pennsylvania**
Hon. Paul S. Diamond, United States District Judge
No. 2:11-cv-05782 PD (E.D. Pa.)
AND ALL RELATED CASES

_____

**MOTION FOR STAY OF DISTRICT COURT'S APRIL 22, 2026 ORDER
DIRECTING SPECIAL DISCOVERY MASTER TO PUBLICLY
DOCKET HEARING MATERIALS CONTAINING
ATTORNEY OPINION WORK-PRODUCT**

**(Expedited Consideration Requested Pursuant to Third Circuit L.A.R. 8.2)**

Christopher C. Conner (PA I.D. 36407)
Stefanie Pitcavage Mekilo (PA I.D. 312720)
SAXTON & STUMP
4250 Crums Mill Road, Suite 201
Harrisburg, PA 17112
Telephone: (717) 216-5522
cconner@saxtonstump.com
smekilo@saxtonstump.com

Gaetan J. Alfano (PA I.D. 32971)
Peter St. Tienne Wolff (PA I.D. 208433)
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI LLP
1818 Market Street, Suite 3402
Philadelphia, PA 19102
Telephone: (215) 320-6200
gja@pietragallo.com
PSW@pietragallo.com

Keith Beauchamp (AZ I.D. 12434)
Malvika A. Sinha (AZ I.D.038046)
COPPERSMITH BROCKELMAN PLC
2800 North Central Avenue, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 381-5490
kbeauchamp@cblawyers.com
msinha@cblawyers.com

*Attorneys for Appellant Hagens Berman
Sobol Shapiro LLP*

# CORPORATE DISCLOSURE STATEMENT

Under Rule 26.1 of the Federal Rules of Appellate Procedure and Third Circuit L.A.R. 26.1.1, Appellant Hagens Berman Sobol Shapiro LLP states that it is not a public company, no public corporation owns 10% or more of an interest in it, and it has no parent company.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS .................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iii

RELIEF SOUGHT ............................................................................................1

REQUEST TO THE DISTRICT COURT ...........................................................4

RELEVANT FACTS AND PROCEDURAL BACKGROUND ............................5

REASONS FOR GRANTING THE RELIEF REQUESTED ..............................10

    A.     The Firm has standing to pursue an appeal. ......................................12

    B.     A direct appeal is likely to be successful on the merits. ....................14

    C.     Irreparable injury is likely absent a stay. ...........................................19

    D.     A stay will not substantially harm any other party. ...........................20

    E.     A stay is in the public interest. ..........................................................21

CONCLUSION ...............................................................................................21

CERTIFICATES OF COMPLIANCE ...............................................................23

CERTIFICATE OF SERVICE .........................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*, 2015 WL 13711858 (N.D. Cal. Apr. 7, 2015)..19

*Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456 (3d Cir. 1996).................. 11, 19, 20

*Hickman v. Taylor*, 329 U.S. 495 (1947)....................................................................21

*Hilton v. Braunskill*, 481 U.S. 770 (1987) .......................................................... 11, 19

*In re Abbott Labs.*, 96 F.4th 371 (3d Cir. 2024) .......................................................11

*In re Chevron Corp.*, 633 F.3d 153 (3d Cir. 2011)....................................................21

*In re Grand Jury Proc.*, 604 F.2d 798 (3d Cir. 1979) ...............................................13

*In re Grand Jury Subpoena*, 745 F.3d 681 (3d Cir. 2014) ........................................13

*In re Grand Jury*, 705 F.3d 133 (3d Cir. 2012) .......................................................21

*In re Impounded Case*, 879 F.2d 1211 (3d Cir. 1989)...............................................12

*In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015)............................... 11, 14, 19, 20

*In re Teleglobe Commc'ns Corp.*, 493 F.3d 345 (3d Cir. 2007) .............................18

*In re Zohar III Corp.*, No. 23-2549, 2024 WL 1929021 (3d Cir. Apr. 23, 2024)...18

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1994).........12

*Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414 (3d Cir. 1991)
...................................................................................................... 16, 17, 18

**Rules**

Fed. R. App. P. 8.................................................................................................1, 4

Fed. R. Civ. P. 26 ......................................................................................... 5, 8, 16

Third Circuit L.A.R. 8.1.............................................................................................4

# RELIEF SOUGHT

Pursuant to Federal Rule of Appellate Procedure 8(a)(2), Appellant Hagens Berman Sobol Shapiro LLP (the "Firm")[1] respectfully requests that this Court stay that portion of the district court's April 22, 2026 Order (DDE 902, attached as "**Exhibit A**"), which initially directed the Special Discovery Master to file publicly the 2017 and 2019 hearing transcripts and exhibits (the "Hearing Materials") no earlier than May 22, 2026.  The district court granted a 30-day stay of that order on May 21, 2026 (DDE 909, attached as "**Exhibit B**").  The district court did not provide any reasons for its decision to enter a stay of limited duration, other than it had entered a similar stay in 2024.  (DDE 909 at 2.)  The limited stay provided by the district court will result in the Special Master docketing the Hearing Materials

---

[1] The Plaintiffs in the underlying civil actions (Rebecca Alexander, Sharon Anderson, Doris Brust, Craig Charleston, Mark Endres, Kathleen Gunn, David Hobbs, Alan Horridge, Tammy Jackson, Gearold Ledsome, Steven Lucier, Ted Mann, Annette Manning, Mary McPartlan Hurson, Robert Murray, Carmella Norcross, Yolanda Perez, Mary Sells, Christopher Simeone, William Tyler, Colleen Van Vleet, Edward Worthan, and Philip Yeatts) have an interest in maintaining the privilege in their attorneys' work product.  As explained *infra*, Third Circuit law recognizes that the Firm itself also has a cognizable interest in protecting its work product.  In ruling on the Firm's June 2024 mandamus petition, the Third Circuit panel questioned whether the Firm had standing to assert the privilege on behalf of Plaintiffs who had not been included in the petition. *In re Hagens Berman Sobol Shapiro LLP*, No. 24-2167, Doc. 27-1 at 1.  Because the Plaintiffs and the Firm each have a cognizable and separate interest in asserting the privilege, the Plaintiffs joined the Notice of Appeal prophylactically to preserve their continuing interest in the privileged materials and demonstrate their ongoing support of the Firm's pursuit of appellate review.

on June 22, 2026, at which time the appeal would still be pending.  Because 30 days is insufficient to resolve the appeal, Appellant now seeks a continued stay before this Court to ensure that the Hearing Materials are not publicly docketed while the appeal is pending.

The Hearing Materials relate to *in camera* hearings where testimony of lawyers and clients were taken with respect to five motions to withdraw on behalf of certain Plaintiffs (the "Withdrawal Plaintiffs") filed by the Firm.[2]  The substantive claims of all five Withdrawal Plaintiffs (as well as those of 23 other Plaintiffs) remain pending in the district court.  Disclosure to Defendants of the mental impressions and opinions of the Firm's lawyers with respect to these 28 pending claims would improperly encroach on the Firm's work-product privilege and irreparably harm the Firm's clients and former clients, who have independent interests in work-product protection.  Accordingly, Appellant seeks a stay of the district court's April 22, 2026 disclosure order (the "April 2026 Order") directed at the Special Discovery Master, who has custody of the Hearing Materials but lacks any interest in preserving the privilege at issue, pending resolution of this appeal.

In its appeal, Appellant seeks to vacate the April 2026 Order as well as the May 24, 2021 Order ("May 2021 Order") (DDE 749, attached as "**Exhibit C**"),

---

[2] The Withdrawal Plaintiffs are John Marshall, Mary Sells, Richard Anderson, Terrie Bolton, and Jose Navamuel.

which contains the district court's waiver finding and on which the April 2026 Order is premised. The district court previously observed that an attempt to challenge the May 2021 Order absent a companion order directing the public docketing of the Hearing Materials was "needlessly premature." (DDE 823.) The April 2026 Order now marries and renders operative the May 2021 Order with a direction to the Special Discovery Master to docket the Hearing Materials. (Ex. A at 4.) The April 2026 Order thus has the effect of making the May 2021 Order ripe for appellate review.[3]

In the May 2021 Order, the district court ruled that the Firm waived the work-product privilege in the Hearing Materials when it provided them to an expert witness. (*See* Ex. C at 2.) But there was no waiver, because the Hearing Materials were provided to the Firm's expert witness to inform an opinion limited to the withdrawal motions, which was to be expressed in a subsequent *in camera* hearing on those same motions. The finding of waiver was an error of law for several reasons, as discussed below.

---

[3] This conclusion is consistent with the Third Circuit's ruling on the Firm's June 2024 mandamus petition, which was denied without prejudice because "the District Court has not ordered the transcripts to be published on the public docket, thus, this element of the petition is not ripe and DENIED without prejudice." *In re Hagens Berman Sobol Shapiro LLP*, No. 24-2167, Doc. 27-1 at 1.

Absent a stay, the Firm's opinion work product will—potentially as soon as June 22, 2026—be disclosed by wholesale publication of the Hearing Materials on the public docket. This would cause irreparable and immediate harm not only to the Plaintiffs, whose substantive claims remain pending in the underlying litigation, but also to the Firm. Issuance of a stay will not harm any other party to the litigation and will further an important public interest. Notably, despite having been invited by the district court to do so, no party opposed the Firm's request for a stay before the district court. Indeed, the only parties to register a response—the Defendants in the court below—took no position whatsoever regarding the stay request. (DDE 907.)

As required by Third Circuit L.A.R. 8.1, copies of the following materials are attached as **Exhibits A and C**: (i) the April 2026 Order; and (ii) the May 2021 Order.

**REQUEST TO THE DISTRICT COURT**

Pursuant to Rule 8(a) of the Federal Rules of Appellate Procedure, the Firm advises that before filing this Motion, it filed a request for stay with the district court on May 13, 2026. (DDE 905, attached as "**Exhibit D**.") The district court entered an Order that same day giving interested parties until May 19, 2026, at 12:00 p.m. to respond to the Motion. (DDE 906, attached as "**Exhibit E**.") The only parties to file a response to the Motion (the Defendants) took no position on the request. The

district court granted a *limited* 30-day stay on May 21, 2026 (DDE 909), which Appellant respectfully submits is an insufficient period of time to resolve the appeal.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

The Firm filed complaints between 2011 and 2014 on behalf of several Plaintiffs against manufacturers and distributors of the drug thalidomide. But the underlying litigation ground to a halt over ten years ago after the district court referred various ancillary matters to Special Discovery Master William T. Hangley ("SDM Hangley"). Relevant here, in 2014, the Firm filed motions to withdraw from its representation of the Withdrawal Plaintiffs due to professional considerations (the "Withdrawal Motions"). (DDE 207, 283, 301, 342, 343, 375). In 2016, the district court directed SDM Hangley to recommend whether to grant the Withdrawal Motions. (DDE 532.) While evaluating those Motions, SDM Hangley took what can best be described as substantial procedural liberties, none of which appear to have been contemplated or authorized by the district court, rules of procedure, or case law. These included, without limitation, (i) applying Federal Rule of Civil Procedure 26 to a non-party/non-litigant summarily, without citing any case law to support that extension (DDE 746 at 5); (ii) inventing the procedurally untethered term "participant" as a substitute for "party" in Rule 26 (DDE 746 at 4, note 1); and (iii) identifying and calling his own witness while denying a request to provide an offer of proof regarding the witness's expected testimony (DDE 736, 747 at 3). After

5

years of these and other unusual procedural steps, in October 2023 SDM Hangley made his recommendations regarding the Withdrawal Motions (DDE 767), on which the district court ruled in August 2025.[4] Although the motions themselves have been resolved, the work-product-waiver issue that arose while SDM Hangley adjudicated the motions remains.

To evaluate the Withdrawal Motions, SDM Hangley scheduled multiple *in camera* hearings in 2017 to take testimony from counsel and clients as to those motions. (*See, e.g.*, DDE 539; *see also* DDE 540, 541, 552 (setting out procedures for *in camera* hearings and standard to be applied).) In doing so, he confirmed that privilege for attorney-client communications and attorney work product would be preserved in the *in camera* proceedings. (DDE 552 at 9−10 ("[I]t is all too well settled for adult discussion that a court's in camera review of documents or other information does not destroy privilege[.]")) The Defendants also confirmed, in the lead-up to the proceedings, that they had no interest in participating in the hearings on the Withdrawal Motions. (DDE 546). These Withdrawal Motions necessarily implicated the Firm's pre-complaint research and legal impressions. Indeed, the transcripts from the 2017 hearings, which were placed under seal by the district court

_____

[4] The district court granted the motions to withdraw as to Plaintiffs Marshall and Anderson; denied the motions as to Plaintiff Sells; and determined the motions as to Plaintiffs Bolton and Navamuel were moot as they were already proceeding *pro se*. (DDE 835).

(*see* DDE 573), consist almost entirely of testimony containing attorney-client privileged communications and attorney opinion work product.

Additional hearings took place in 2019, during which several Firm attorneys—as well as the Firm's former co-counsel—testified about various privileged matters involving the underlying litigation, including the drafting of the complaints, the Firm's theories of liability, and the Firm's work on the cases before and after filing them. Over the Firm's objection, SDM Hangley ordered that the Defendants in the underlying litigation could hear testimony and access exhibits on a limited basis in the 2019 hearings, but "only when such testimony or exhibits are pertinent to the crime-fraud exception" to the attorney-client privilege. (DDE 644 at 16.) Thus, the Defendants were not present for the vast majority of the 2019 hearings, and—apart from limited instances involving the crime-fraud exception or testimony from a Plaintiff who had waived her privilege—did not have access to any testimony or exhibits relating to privilege or work product.

The hearings were set to resume in 2020. In preparation for those hearings, the Firm notified SDM Hangley that it would offer expert testimony by Abraham Reich in support of the Withdrawal Motions. (DDE 707.) Even though the Firm was not a party in the litigation, Mr. Reich had not been retained by the Plaintiffs, and Mr. Reich's opinion was not being offered against the Defendants in the underlying product liability actions, SDM Hangley determined that Federal Rule of

7

Civil Procedure 26 applied and required the Firm to have Mr. Reich prepare an expert report pursuant to Rule 26(a)(2) (the "Reich Report"). (*See id.*) After the Firm produced the Reich Report and presented Mr. Reich as an expert to offer an opinion on the propriety of the Withdrawal Motions, SDM Hangley subsequently ruled that, by providing Mr. Reich with copies of the Hearing Materials, the Firm had waived work-product protection. (DDE 742, attached as "**Exhibit F**.")[5] SDM Hangley simultaneously filed on the public docket a version of the Reich Report, containing some attorney work product. (DDE 743.) A few days later, he issued a memorandum explaining his decision. (DDE 746, attached as "**Exhibit G**.") Over the Firm's objection, the district court issued the May 2021 Order, which held that SDM Hangley correctly found waiver of work product because, through the act of providing the Hearing Materials to Mr. Reich, the Firm had made them available for scrutiny by the public writ large, including the Defendants, who were purportedly the Firm's "adversaries" and "participants" in the withdrawal proceedings. (Ex. C.) At that time, however, there was no direction or effort to publish the transcripts or exhibits themselves to the docket and reveal *all* attorney work product disclosed during the *in camera* hearings. (*See id.*)

---

[5] Special Master Hangley ruled that there was no waiver of attorney-client privilege "because the disclosures were not authorized and were not in Hagens Berman's clients' interests." (DDE 742.)

From May 2021 through June 2024, litigation on proposed attorney-client-privilege redactions to the hearing transcripts and related objections unfolded before SDM Hangley. (DDE 750, 805.) That litigation culminated in a June 20, 2024 order in which the district court ordered the Firm to submit redacted copies of the hearing transcripts, presumably to be publicly docketed shortly thereafter. (DDE 811.)

The Firm moved (in the district court) for a stay as to the district court's June 20, 2024 Order (DDE 819), which the district court granted, (DDE 823). While the June 20, 2024 Order was stayed, the Firm filed a Petition for Writ of Mandamus with this Court. *In re Hagens Berman Sobol Shapiro LLP*, No. 24-2167, Doc. 1-1. The panel denied the Petition without prejudice, reasoning that the district court had not yet ordered the transcripts to be published on the public docket and that the Petition was thus unripe. *Id.*, Doc. 27-1.

Litigation before the district court on privilege issues continued thereafter. At first, the litigation focused on resolving the proposed redactions that the district court had requested for the hearing transcripts. (DDE 881, 824, 825.) Notably, certain former clients (Plaintiffs Bolton and Cabcabin) joined in the Firm's ongoing waiver objection, even though the Firm itself had standing to assert work-product privilege under Third Circuit law. (DDE 826, 827.) In response to the objections, SDM Hangley modified some of his earlier redaction determinations. (DDE 829.) Again,

the Firm continued to object and preserve its ongoing objection to the underlying work-product waiver determination.  (DDE 830.)

Briefing to SDM Hangley regarding proposed redactions for the hearing *exhibits* followed, with the Firm continuing to preserve its ongoing objections to the underlying waiver determination.  (DDE 832, 836, 841, 861.)  Ultimately, on October 22, 2025, SDM Hangley issued a Further Report and Recommendation that discussed his modified proposed redactions to the hearing exhibits (again for the attorney-client privilege only).  (DDE 861.)

From October 2025 onward, litigation before the district court proceeded on other issues.  However, on April 22, 2026, the district court issued the operative order that required SDM Hangley to file the Hearing Materials to the public docket by no earlier than May 22, 2026 (now stayed until June 22, 2026), thereby eviscerating the protection of the work-product privilege.  Thus, attorney work product contained in all the Hearing Materials will be published absent a continuing stay while the Firm pursues its direct appeal.

## REASONS FOR GRANTING THE RELIEF REQUESTED

Because the district court's disclosure order is directed to SDM Hangley, who has custody of the Hearing Materials but lacks an interest in preserving the work-product privilege at issue, the Firm is pursuing a direct appeal under the *Perlman* doctrine.  As this Court has stated, a petition for a writ of mandamus is not the correct

10

procedural vehicle to seek appellate review when a direct appeal is possible. *See In re Abbott Labs.*, 96 F.4th 371, 385 (3d Cir. 2024); *Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 461 (3d Cir. 1996). Consistent with that instruction, in lieu of renewing its mandamus petition and given the changed posture under the April 2026 Order, the Firm submits that a *Perlman* appeal provides the appropriate path for appellate review. Accordingly, because a procedural vehicle for direct appellate review exists, the Firm is not currently seeking mandamus relief.[6]

The four factors that govern the issuance of a stay pending appeal are: "(1) whether the stay applicant has made a strong showing of the likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially harm other parties with an interest in the litigation; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The first two factors—likelihood of success and of irreparable injury, respectively—are the most critical. *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015). Once a stay applicant satisfies those factors, the Court must "balance the relative harms considering all four stay factors using a sliding scale approach." *Id.* at 571. Here, all four factors support a stay.

---

[6] If the Court were to determine that the *Perlman* doctrine does not confer jurisdiction for a direct appeal, the Firm intends to renew its June 2024 mandamus petition, which this Court denied without prejudice.

## A. The Firm has standing to pursue an appeal.

As an initial matter, the Firm has standing to pursue a direct appeal from the May 2021 and April 2026 Orders.[7] The Firm appeals the district court's finding that it has waived work-product privilege in the Hearing Materials, *not* attorney-client privilege. Because the Firm holds the work-product privilege, it may assert the protection on its own behalf. *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 866 (3d Cir. 1994) ("[T]he protection stemming from the work product doctrine belongs to the professional, rather than the client."); *In re Impounded Case*, 879 F.2d 1211, 1214 (3d Cir. 1989) ("The law firm also asserts a privilege derived from the work product doctrine. It may, of course, assert such a privilege on its own behalf."); *see also Hobley v. Burge*, 433 F.3d 946 949 (7th Cir. 2006) ("It is well-established that the work-product privilege may be invoked by either the client or the attorney…An attorney has an independent interest in privacy, even when the client has waived its own claim, as long as invoking the privilege would not harm the client's interest." (citations omitted)); *In re Sealed Case*, 29 F.3d 715, 718 (D.C.

---

[7] In its ruling regarding the Petitioner's June 2024 mandamus petition, the panel stated that "Petitioners cannot assert privilege on behalf of the Withdrawal Plaintiffs and that any such assertions should be considered in the first instance by the district court after having been raised by the appropriate privilege holder." *In re Hagens Berman Sobol Shapiro LLP*, No. 24-2167, Doc. 27-1. It is unclear whether this observation was intended to question the Firm's standing in its own right, or on behalf of parties it no longer represents. The Firm's interpretation is the latter, but in an abundance of caution, in addition to the nominal inclusion of the Plaintiffs in this appeal, the Firm addresses briefly here its standing in its own right.

Cir. 1994) (work-product privilege may be asserted not only by lawyer but also his client (citation omitted)). Of course, in some cases a client may also assert the work-product privilege where their interests are affected. But this corollary right does not alter the attorney's right to assert the privilege in the first instance. *See In re Grand Jury Subpoena*, 745 F.3d 681, 693 (3d Cir. 2014) ("A lawyer 'may assert the work product privilege,' and '[t]o the extent a client's interest may be affected, he, *too*, may assert the work product privilege.'" (emphasis added) (quoting *In re Grand Jury Proc.*, 604 F.2d 798, 801 (3d Cir. 1979))). Indeed, for at least some of the Withdrawal Plaintiffs, only the Firm can protect Plaintiffs' interest in preserving the privilege. (*See* DDE 767 (explaining that one withdrawal Plaintiff, Mr. Anderson, cannot be located).)

Moreover, at the time of the June 2024 mandamus petition, several Plaintiffs had already asserted the work-product privilege on their own behalf. Withdrawal Plaintiff Terrie Bolton joined the Firm's objections before both this Court and the district court. *In re Hagens Berman Sobolo Shapiro LLP*, No. 24-2167, Docs. 8 (Notice to this Court), 8-2 (Plaintiff Bolton's Joinder in the Firm's motions to stay and for reconsideration). Several Plaintiffs filed a response before SDM Hangley. (DDE 719.) Still more Plaintiffs have signaled their support for the Firm's efforts and the Plaintiffs' continuing interest in shielding the Hearing Materials from disclosure through public docketing in the instant appeal. *See supra* at n.1.

Accordingly, even if multiple Plaintiffs had not themselves asserted the work-product privilege, the Firm itself has standing to assert the privilege on its own behalf.

**B.      A direct appeal is likely to be successful on the merits.**

To establish a likelihood of success on the merits, the movant must show "a reasonable chance, or probability, of winning.  Thus, while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not." *Revel*, 802 F.3d at 568−569 (cleaned up).

A direct appeal of this Court's waiver determination has a reasonable chance of being successful for several reasons—all of which converge on the same fundamental reality: under the circumstances of this case, no reasonable attorney would have believed that the work-product materials at issue were likely to fall into the hands of an "adversary."  Indeed, it is difficult to fathom how counsel could reach any other conclusion given the assurances of SDM Hangley, which left no doubt that *in camera* proceedings on the Withdrawal Motions would be conducted *to preserve privilege*.  In advance of the proceedings, SDM Hangley announced: "To avoid invasion or waiver of privilege, my inquiries into dealings between Hagens

Berman and the…Plaintiffs will be conducted in camera." (DDE 539 at 1.) [8] Despite having "no doubt" concerning his "discretion to proceed in camera, and to exclude Defendants from this particular inquiry," SDM Hangley took the further step of ordering the Defendants to advise whether they "waive any objection to…proceeding in this manner," (*id.*), and the Defendants did so, (DDE 546). SDM Hangley further clarified that his order to the Defendants "was intended to assure the…plaintiffs that their confidential or privileged information would not somehow fall into defendants' hands." (DDE 552 at 4 n.7). Consistent with his stated intent, SDM Hangley proceeded to conduct *separate in camera* hearings for *each* Withdrawal Plaintiff. (*See* DDE 588 at 6.) These proceedings were unquestioningly designed and implemented to preserve all relevant privileges and exclude Plaintiffs' adversaries in the underlying cases—*i.e.*, the Defendants.

Against this backdrop, the district court committed threshold clear legal error when it adopted SDM Hangley's unsupported conclusion that Federal Rule of Civil Procedure 26's expert disclosure requirements apply to a *non-party's* expert who was not opining on a substantive issue in the underlying civil action and would not be used at trial. Rule 26's language explicitly relates to the disclosure obligations of a "*party*" for an expert that may be used "*at trial*." *See* Fed. R. Civ. P. 26(a)(2)(A)

---

[8] (*See also* DDE 588 at 5 ("The [2017] hearings were held *in camera* to preserve the five plaintiffs' attorney-client and work product protection."))

(emphasis added). SDM Hangley's reliance on Rule 26(a)(2)(B)(ii) regarding "facts or data considered by the witness" to support his waiver determination (DDE 746 at 21) was therefore flawed, and the district court clearly erred in adopting SDM Hangley's cursory logic.

Additionally, and consistent with controlling Third Circuit law, the Firm did not disclose work-product-privileged material to the Plaintiffs' adversaries, *i.e.*, the Defendants. In discussing waiver of the work-product privilege, this Court has observed that "[b]ecause the work-product doctrine serves instead to protect an attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991). Instead, "the purpose of the work-product doctrine requires us to distinguish between disclosures to adversaries and disclosures to non-adversaries." *Id.* Thus, under this Court's precedent, whether a party is disclosing privileged materials to an adversary, or in a manner which necessarily enables an adversary to gain access, is the critical inquiry.

Here, the waiver determination was based on the Firm's disclosure of the Hearing Materials to Mr. Reich. (Ex. C at 2.) This Court has been clear, however, that mere "disclosure to a third party does not necessarily waive the protection of the work-product doctrine," and that the relevant inquiry instead is whether "the

16

disclosure…enable[s] *an adversary* to gain access to the information." *Westinghouse Elec. Corp.*, 951 F.2d at 1428 (emphasis added). Accordingly, a finding of work-product waiver based solely on the existence of *any* disclosure is plainly incorrect. Perhaps most critically, given the protections established and repeatedly underscored by SDM Hangley for the withdrawal proceedings, no reasonable attorney would have suspected that disclosure of the Hearing Materials to Mr. Reich in connection with those proceedings would have risked waiver of the privilege. *See id.* at 1431 (explaining that when disclosure is inadvertent or to a non-party, "it is appropriate to ask whether the circumstances surrounding the disclosure evidenced conscious disregard of the possibility that an adversary might obtain the protected materials").

Over the Firm's objections, the district court further determined that the Defendants were "both the Firm's adversaries and participants in" the Withdrawal Motion proceedings. (Ex. C at 2; Ex. A at 1−2 (extending determination to hearing exhibits).) At the time of the Reich Report, however, the Defendants had disclaimed any interest in participating in the 2017 proceedings (DDE 546), and when they later sought to participate in the 2019 proceedings over the objections of the Firm and the Withdrawal Plaintiffs, it was not with respect to the withdrawal issue (the only topic on which Mr. Reich was opining). Plus, in 2019, the Defendants agreed that privileges (outside the Weaver-related crime-fraud exception to which the Reich

Report did not relate) would be preserved. (DDE 602.) Thus, the Defendants were not adversaries to or against whom Mr. Reich's opinion related or was offered.[9]

While not articulated as an express basis for its waiver determination, the district court has also observed that the Firm is trying to use the work-product privilege as a "sword and shield" to defeat sanctions. (*See* Ex. C at 3.) In its stay order, the court shifted its reasoning, saying instead that the sword/shield analogy related to the Firm's attempt to preclude the parties from reviewing the hearing transcripts. (DDE 909 at 2.) These observations—in addition to being inconsistent—are wrong. As explained above, the Firm commissioned Mr. Reich's opinion to support its motions to withdraw, (DDE at 9−10), and Mr. Reich did not opine on sanctions or the substance of the underlying product liability cases—as

---

[9] This reasoning is also consistent with post-*Westinghouse* law on waiver. This Court recently observed that "[c]ourts consider whether 'one party t[ook] advantage of another' and if partial disclosure created an 'unfair advantage' when deciding whether partial disclosure forfeits a privilege as to all or some privileged information." *In re Zohar III Corp.*, No. 23-2549, 2024 WL 1929021, at *4 (3d Cir. Apr. 23, 2024) (citing *Westinghouse Elec. Corp.*, 951 F.2d at 1426 n.12 and *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007)). Given that the Defendants themselves had disclaimed any interest in the Reich Report, they recognized that the report—offered solely in support of the Firm's motions to withdraw—did not give the Plaintiffs an unfair advantage over them. That the Defendants have not opposed the Firm's request for a stay before the district court further confirms that the Defendants have no interest in the Reich Report or any materials underlying it.

reflected by the Defendants' avowed disinterest in his opinion. *See supra* at pp. 14–18.

For all these reasons, the Firm is likely to succeed on the merits of its appeal.

**C.      Irreparable injury is likely absent a stay.**

A stay movant must demonstrate that irreparable injury is likely absent a stay. *See Hilton*, 481 U.S. at 776. Irreparable injury means a "harm that cannot be prevented or fully rectified by a successful appeal." *Revel*, 802 F.3d at 568. This Court has recognized that "when a district court orders production of information over a litigant's claim of privilege not to disclose…compliance with the production orders complained of destroys the right sought to be protected." *Hahnemann Univ. Hosp.*, 74 F.3d at 461. Thus, the "irreparable injury" factor is satisfied if the enforcement of an existing order requires disclosure of work-product privileged materials. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 2015 WL 13711858, at *1 (N.D. Cal. Apr. 7, 2015) (stay warranted pending appeal where it would protect litigant "from the wrongful and irrevocable compelled disclosure of its privileged information[.]").

Revealing to the Defendants and the public the Plaintiffs counsel's mental impressions with respect to currently pending cases is obviously harmful and irreparable. Plaintiffs should not be forced to litigate against Defendants who have obtained mental impressions, conclusions, opinions, and legal theories of their

counsel. Nor should counsel be disadvantaged. Moreover, publication of unredacted (as to work product) versions of the Hearing Materials on the public docket would forever destroy the privilege. *Hahnemann*, 74 F.3d at 461. If the publication deadline is not indefinitely stayed pending appeal, the Firm and its clients will realize no benefit from appellate review, as the privilege for the documents will have been destroyed and the damage done.

**D.     A stay will not substantially harm any other party.**

Once the Firm has established the first two factors, the Court must employ a "sliding scale" approach to balance any relative harms. *Revel*, 802 F.3d at 571. The third factor—substantial harm to any other party—also favors a stay here. No other party with an interest in this litigation will be substantially harmed by a stay. Indeed, the April 2026 Order does not involve underlying claims against thalidomide manufacturers at all, but rather an ancillary investigation into the Firm's motions to withdraw from representation of certain Plaintiffs. (Even assuming the district court's presumption that Mr. Reich's opinion related to sanctions is correct, no party has moved for sanctions, so no party would be harmed by a delay.) That no party (no Defendant and no Plaintiff) opposed the Firm's motion to stay before the district court further confirms that no one stands to be harmed by a stay of the April 2026 Order. Moreover, if the Firm is eventually unsuccessful in its appeal, the materials can be filed on the public docket at a later date. Indeed, the district court previously

granted a stay (DDE 823) pending the June 2024 mandamus petition, and no party has suggested doing so caused it any harm.

**E.      A stay is in the public interest.**

Finally, the public interest factor also weighs in favor of a stay.  The work-product privilege allows attorneys to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."  *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).  In this way, it "promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients."  *In re Grand Jury*, 705 F.3d 133, 151 (3d Cir. 2012) (quoting *In re Chevron Corp.*, 633 F.3d 153, 164 (3d Cir. 2011)).  Publishing the Firm's work product on the public docket would undermine these important interests and have a chilling effect on attorneys' abilities to represent their clients.

## CONCLUSION

For all these reasons, Appellant respectfully submits that this Court should, pending resolution of the appeal, stay the April 2026 Order directing SDM Hangley to publish the Hearing Materials to the public docket.

Date: May 28, 2026

Respectfully submitted,

**SAXTON & STUMP**

*s/ Christopher C. Conner*
Christopher C. Conner (PA I.D. 36407)
Stefanie Pitcavage Mekilo (PA I.D. 312720)
4250 Crums Mill Rd., Ste. 201
Harrisburg, PA 17112
Telephone: (717) 216-5505
cconner@saxtonstump.com
smekilo@saxtonstump.com

**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI LLP**

Gaetan J. Alfano (PA I.D. 32971)
Peter St. Tienne Wolff (PA I.D. 208433)
1818 Market Street, Suite 3402
Philadelphia, PA 19102
Telephone: (215) 320-6200
gja@pietragallo.com
PSW@pietragallo.com

**COPPERSMITH BROCKELMAN PLC**

Keith Beauchamp (AZ I.D. 12434)
Malvika A. Sinha (AZ I.D.038046)
2800 North Central Avenue, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 381-5490
kbeauchamp@cblawyers.com
msinha@cblawyers.com

*Attorneys for Appellant Hagens Berman
Sobol Shapiro LLP*

# CERTIFICATES OF COMPLIANCE

I, Christopher C. Conner, Esquire, certify as follows:

1.      This Motion complies with the word-count limitation of Fed. R. App. P. 27(d) because it contains 5,191 words, excluding the exempted portions.

2.      This Motion complies with the typeface requirements of Third Circuit L.A.R. 32.1(c) and Fed. R. App. P. 32(a)(5) & (6) because it was prepared in proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

3.      The text of each of the electronic and hard copy forms of this Motion are identical.

4.      A virus detection program, Microsoft Defender for Endpoint P1, version 10.8797.25857.1000, was run on the electronic version of the brief and no viruses were detected.

5.      Pursuant to 28 U.S.C. § 1746, I certify that under penalty of perjury that the foregoing is true and correct.


Dated: May 28, 2026                     s/  *Christopher C. Conner*

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2026, copies of the foregoing Motion for Stay of District Court's April 22, 2026 Order Directing Special Discovery Master to Publicly Docket Hearing Materials Containing Attorney Opinion Work Product were served via email upon all counsel of record and parties proceeding *pro se* in the district court at the following email addresses:

MICHAEL T. SCOTT    mikescottlaw@outlook.com, dford@reedsmith.com, jhenry@reedsmith.com, mscott@reedsmith.com

GAETAN ALFANO    gja@pietragallo.com, pk@pietragallo.com

ROBERT E. WELSH, JR rewelsh@welshrecker.com, cmcparland@welshrecker.com, rwalk@welshrecker.com

WILLIAM T. HANGLEY whangley@hangley.com, ccm@HANGLEY.COM, ecffilings@hangley.com, jdb@hangley.com

ERIC L. ALEXANDER ealexander@reedsmith.com

ARTHUR DONATO, JR art@artdonato.com, nancymcl@artdonato.com

RACHEL BETH WEIL rweil@reedsmith.com, rachel-weil-8451@ecf.pacerpro.com, reed-smith-2312@ecf.pacerpro.com

STEPHEN J. MCCONNELL smcconnell@reedsmith.com, reed-smith-2312@ecf.pacerpro.com, rgilson@reedsmith.com, stephen-mcconnell-1593@ecf.pacerpro.com

LISA L. SMITH Lsmith@phillipslytle.com, jgarcia@phillipslytle.com, lweber@phillipslytle.com

THOMAS S. WISWALL twiswall@phillipslytle.com, cpalumbo@phillipslytle.com, ecfphillips@phillipslytle.com, jgroat@phillipslytle.com

CINDY K. BENNES ckbennes@phillipslytle.com, dbuckingham@phillipslytle.com, ecfphillips@phillipslytle.com, jcarella@phillipslytle.com

LAURENCE F. PULGRAM lpulgram@fenwick.com, dwalls-stewart@fenwick.com, laurence-pulgram-6364@ecf.pacerpro.com, tgregorian@fenwick.com

Sonja Stenger Weissman sweissman@reedsmith.com

MARTHA M. HARRIS mharris@phillipslytle.com

TAMAR P. HALPERN thalpern@phillipslytle.com, hkosicki@phillipslytle.com, lweber@phillipslytle.com

ELIEZER GRANEK egranek@eckertseamans.com, lspencer@eckertseamans.com

THOMAS J. SHEEHAN tsheehan@phillipslytle.com

TODD RICHARD GREGORIAN tgregorian@fenwick.com, sgray@fenwick.com

FARAH TABIBKHOEI ftabibkhoei@reedsmith.com, vparedes@reedsmith.com

RAYMOND A. CARDOZO rcardozo@reedsmith.com

CARY L. RICE crice@hangley.com, kem@hangley.com

CYNTHIA ALBRACHT-CROGAN ccrogan@cdqlaw.com, ccohoat@cdqlaw.com, vsierra@cdqlaw.com

DAVID C. WEINER daveweiner11@gmail.com

CAROLYN SAMPSON cafsampson@gmail.com

JOSE NAVAMUEL josenavamue@gmail.com

MARY SELLS Sweets77@outlook.com

TERRIE BOLTON tmixon922@gmail.com

DARREN GRIGGS dgriggs622@gmail.com

JOHN MARSHALL jmarshall.marshall9@gmail.com

MARK HARRELLSON harrelson40@bellsouth.net

Dated:  May 28, 2026                    s/ *Christopher C. Conner*

**MOTION FOR STAY OF DISTRICT COURT'S APRIL 22, 2026 ORDER DIRECTING SPECIAL DISCOVERY MASTER TO PUBLICLY DOCKET HEARING MATERIALS CONTAINING ATTORNEY OPINION WORK-PRODUCT**

**Exhibit A**
Order of April 22, 2026 (DDE 902)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GLENDA JOHNSON**, *et al.* | : | |
| | : | |
| v. | : | **Civ. No. 11-5782** |
| | : | **and all related cases** |
| | : | |
| **SMITHKLINE BEECHAM** | : | |
| **CORPORATION**, *et al.* | : | |

## O R D E R

In these consolidated thalidomide actions, I ordered the law firm Hagens Berman Sobol Shapiro LLP to submit copies of the 2017 and 2019 hearing transcripts "redacted only to preserve past and present Hagens Berman clients or potential clients' attorney-client privileges." (Doc. No. 817.) Special Discovery Master William T. Hangley reviewed those submissions and recommended transcript redactions. (Doc. No. 824.) Mr. Hangley separately recommended redactions to the hearing exhibits. (Doc. No. 832.) In response to objections, Mr. Hangley revised his Recommendations. (Doc. Nos. 825, 829, 830, 836, 841, 861.) Hagens Berman, Steve Berman, Diana Cabcabin, and *pro se* Plaintiff Terrie Bolton have filed Objections to the Revised Recommendations. (Doc. Nos. 830, 874, 875, 876.) I will adopt the recommended redactions.

## I.   GENERAL OBJECTIONS

In responding to Mr. Hangley's proposed redactions, Hagens Berman and Steve Berman "preserve and incorporate by reference" their general Objections that I have already overruled: (1) that neither the Firm nor certain Plaintiffs waived work product protection when the Firm provided the 2017 and 2019 hearing transcripts and exhibits to its testifying expert; and (2) that Mr. Hangley has acted outside his authority and his "continued participation in this matter" is improper. (Doc. Nos. 830, 875.) As I have repeatedly ruled, these Objections are meritless. (See Doc. Nos. 749, 787, 823, 834.) Accordingly, I will again overrule these Objections as to both the hearing

1

transcripts and exhibits.

## II.    TRANSCRIPT REDACTIONS

The Firm has agreed to all Mr. Hangley's revised recommended transcript redactions. (Doc. No. 830.)

Ms. Bolton and Ms. Cabcabin objected generally to Mr. Hangley's initial Recommendations. (Doc. Nos. 826, 827.) Ms. Bolton requested that "the portions of the 2017 and 2019 transcripts that were conducted privately" remain under seal. (Doc. No. 826.) Ms. Cabcabin objected that the entirety of her own testimony as well as Tyler Weaver's testimony "that pertains to her" should remain sealed. (Doc. No. 827.) Neither renewed her Objections to Mr. Hangley's revised Report and Recommendations. (See Docket, Doc. No. 829.) In any event, because, in his proposed redactions, Mr. Hangley appropriately redacted privileged communications, I will overrule these Objections and adopt the proposed transcript redactions.

## III.    EXHIBITS REDACTIONS

The Firm "reiterates its objections" that portions of thirteen exhibits should be further redacted. (Doc. No. 875.) Ms. Bolton and Ms. Cabcabin have also filed Objections to the exhibit Redactions Recommendations. (Doc. Nos. 874, 876.)

First, the Firm and Ms. Bolton object to Mr. Hangley's Recommendation that Bolton Exhibits 7 and 8-1 through 8-7—a 2003 hospital discharge summary and photographs of Ms. Bolton's birth injuries—be unsealed. (Doc. Nos. 874, 875 at 2.) As I previously explained, because of Ms. Bolton's allegations of injury, she has waived doctor-patient confidentiality. Her medical records thus necessarily may not be kept under seal. (See Doc. No. 593.) I will thus overrule these Objections.

Next, the Firm argues that certain portions of Attorney Kay Reeves' notes about certain

Plaintiffs' claims should be further redacted. (Doc. No. 875 at 3–6.) Mr. Hangley found, and I agree, that Hagens Berman has not made out that the material at issue describes attorney-client communications. Because the Firm's speculation that the communications at issue *might* have been between attorney and client are insufficient to provide privilege protection, I will overrule these Objections. See Nationwide Mut. Ins. Co. v. Fleming, 924 A.2d 1259, 1267 (Pa. Super. Ct. 2007).

The Firm further objects that Ms. Reeves' reporting that Ms. Cabcabin had approved a draft complaint should be redacted because "it reveals the substantive content of a communication between Ms. Cabcabin and the Firm about the case." (Doc. No. 875 at 7.) There is no expected confidentiality in rules-required verifications. See Pa. R. Civ. P. 1024(c); In re Grand Jury Supoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984) ("If confidentiality [is] not intended . . . the privilege [does] not attach."). Accordingly, I will overrule this Objection.

Finally, Ms. Cabcabin "requests to maintain redacted and/or under seal all confidential information in which [she] has a protectable attorney-client privilege, attorney work product, or privacy interest," which "include[s] the expert reports identified" as Hagens Berman Exhibits 4 and 5. (Doc. No. 876.) Because Ms. Cabcabin does not identify any privilege-preserving redactions beyond those recommended by Mr. Hangley, and I have already ruled that any work-product protection over these exhibits has been waived, I will overrule her Objections. (See Doc. Nos. 748, 749.)

## IV.    CONCLUSION

In sum, I will overrule all Objections and adopt the recommended redactions. I will grant the Firm's request that I allow them to seek a stay and appellate review before publication of any

exhibits or transcripts "containing attorney work product." (Doc. Nos. 830, 875); See In re Hagens Berman Sobol Shapiro LLP, et al., No. 24-2167 (3d Cir. 2024) (denying as premature the Firm's prior mandamus attempt on this issue).

*     *     *

**AND NOW**, this 22nd day of April, 2026, upon consideration of Special Discovery Master Hangley's Amended Reports and Recommendations (Doc. Nos. 829, 861), Terrie Bolton's Objections (Doc. Nos. 826, 874), Hagens Berman and Steve Berman's Objections (Doc. Nos. 830, 875), and Diana Cabcabin's Objections (Doc. Nos. 827, 876); it is hereby **ORDERED** that the Reports and Recommendations of the Special Discovery Master (Doc. Nos. 829, 861) are **APPROVED** and **ADOPTED**. The Special Master shall file publicly the 2017 and 2019 hearing transcripts and exhibits redacted according to the Table A, Revised (Doc. No. 829) and Amended Table X (Doc. No. 861) no earlier than May 22, 2026. Any interested Party shall file a Motion to Stay **no later than** May 21, 2026, at 12:00 p.m.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*

_____

Paul S. Diamond, J.

MOTION FOR STAY OF DISTRICT COURT'S APRIL 22, 2026 ORDER DIRECTING
SPECIAL DISCOVERY MASTER TO PUBLICLY DOCKET HEARING MATERIALS
CONTAINING ATTORNEY OPINION WORK-PRODUCT

**Exhibit B**
Order of May 21, 2026 (DDE 909)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

GLENDA JOHNSON, *et al.*,      :
                               :
v.                             :      **Civ. No. 11-5782**
                               :      **and all related cases**
SMITHKLINE BEECHAM             :
CORPORATION, et al.            :

## O R D E R

Plaintiffs' Counsel, Hagens Berman Sobol Shapiro LLP, seeks a stay of my April 22, 2026 Order adopting Special Discovery Master William T. Hangley's recommendations to redact portions of the 2017 and 2019 hearing transcripts and exhibits in these consolidated thalidomide cases. (Doc. Nos. 829, 861, 902, 905.) The Firm intends to seek appellate review, challenging: (1) the portion of my April 22 Order directing Mr. Hangley to file publicly the transcripts and exhibits, and (2) my 2021 ruling that the Firm had waived work product privilege over the materials by disclosing their contents to their testifying expert. (Doc. Nos. 749, 902, 905-1 at 2); see In re Chevron Corp., 633 F.3d 153, 165 (3d Cir. 2011) (court-appointed expert witness's access waived privilege). Defendants take no position on the Motion, which I will grant. (Doc. No. 907.)

In June 2024, I ordered the Firm to submit the hearing transcripts *in camera* to the Court and Mr. Hangley with redactions permitted only to preserve attorney-client—but not work product—privilege. (Doc. Nos. 811, 817.) When the Firm later that month asked me to stay that Order so it could pursue mandamus in the Third Circuit, I explained that its request was "both unreasonably late and needlessly premature." (Doc. Nos. 817, 819, 823 at 4.) The Firm failed to seek review of my 2021 work product waiver decision until some three years had elapsed. (Doc. No. 823 at 4.) Moreover, at that point I had "not considered [Mr. Hangley's redaction] recommendations or ordered the public docketing of the transcripts and exhibits." (Id.) In an abundance of caution, I nonetheless stayed my Order for 30 days pending Third Circuit review.

(Id.) The Third Circuit denied the Firm's mandamus petition as unripe because I had "not ordered the transcripts to be published on the public docket." In re Hagens Berman Sobol Shapiro, LLP, No. 24-2167, Doc. No. 27-1 at 1. Now that I have ordered Mr. Hangley to publish those transcripts, the Firm has renewed its request to seek review of the waiver decision. (Doc. Nos. 902, 905.)

As I have explained, the Firm's waiver position is meritless. Rejecting Mr. Hangley's common sense waiver recommendation would allow Hagens Berman to use the transcripts' contents as both a sword (by disclosing them to the Firm's testifying expert) and shield (by simultaneously precluding any other Party from reviewing those same transcripts). (See Doc. No. 823 at 2 (collecting cases).) Nevertheless, as I did some two years ago, I will grant the Firm's Motion and stay my April 22 Order for 30 days so that the Third Circuit will once again have the opportunity to review this matter. (See Doc. No. 908.)

\*                               \*                               \*

**AND NOW**, this 21st day of May, 2026, upon consideration of Hagens Berman's Expedited Motion for Stay (Doc. No. 905), and Defendants' Response (Doc. No. 907), it is hereby **ORDERED** that the Motion (Doc. No. 905) is **GRANTED**. It is further **ORDERED** that the portion of my April 22, 2026 Order (Doc. No. 902) directing Special Master William T. Hangley to file publicly the 2017 and 2019 hearing transcripts and exhibits is stayed for 30 days.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*

Paul S. Diamond, J.

2

MOTION FOR STAY OF DISTRICT COURT'S APRIL 22, 2026 ORDER DIRECTING
SPECIAL DISCOVERY MASTER TO PUBLICLY DOCKET HEARING MATERIALS
CONTAINING ATTORNEY OPINION WORK-PRODUCT

**Exhibit C**
Order of May 24, 2021 (DDE 749)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLENDA JOHNSON, et al. | : | |
| | : | |
| v. | : | **Civ. No. 11-5782** |
| | : | **and all related cases** |
| SMITHKLINE BEECHAM | : | |
| CORPORATION, et al. | : | |

## O R D E R

Having been the subject of misconduct sanctions (Doc. No. 483), the Firm of Hagens Berman seeks to prevent the imposition of additional sanctions by offering an expert report authored by Abraham Reich. The purpose of the report is to demonstrate, *inter alia*, that the Firm conducted an adequate investigation before initiating various thalidomide cases. Pa. R. of Professional Conduct § 1.16(a)(1). In coming to this conclusion, Mr. Reich explicitly acknowledged reviewing numerous Hagens Berman materials that otherwise would have been subject to the work product privilege, the attorney client privilege, or both.

Having given all concerned ample opportunity to address the issue, Special Master William T. Hangley has determined that once the Firm provided these materials to Mr. Reich, it waived the work product privilege, and that the Hagens Berman materials would thus be provided to Defendants (from whom Mr. Hangley had withheld the materials because they were privileged). Hagens Berman objects, arguing that: (1) distribution of the materials must be limited to the Firm's "adversaries" and to "participants" in the proceedings Mr. Hangley is presently conducting; (2) Defendants are neither the Firm's "adversaries" nor "participants" in the Hangley proceedings (having been excluded when privileged materials were discussed or disclosed); and (3) the privilege was not waived simply because "Mr. Reich was retained as a testifying expert." (Objections at 15.)

Hagens Berman has thus confused the law and the record. The Firm waived the privilege not when it "retained" Mr. Reich, but when it disclosed to him otherwise privileged materials. See Kida v. EcoWater Sys. LLC, 2011 WL 1883194, at *4 (E.D. Pa. May 17, 2011). Whether or not Defendants are "adversaries" or "participants" in the proceedings before Mr. Hangley is thus quite beside the point. Once there was a waiver, the materials were unprotected from public scrutiny. See Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1427–30 (3d Cir. 1991); In re Teleglobe Commc'ns Corp., 493 F.3d 345, 361 (3d Cir. 2007).

In any event, it is apparent that Defendants are both the Firm's adversaries and participants in these proceedings. Since I appointed him in 2014, Mr. Hangley has—in accordance with my Order—sought to determine how the 52 Plaintiffs in this consolidated matter could proceed with these product claims that were apparently time-barred. (Doc. No. 316.) Over the ensuing seven years, Hagens Berman has done what it could to frustrate Mr. Hangley, who has nonetheless uncovered extremely disturbing facts. I have thus been compelled to broaden Mr. Hangley's portfolio, keeping in mind his primary focus: whether these suits were permissibly initiated and prosecuted. In accordance with my October 31, 2014 Order, Mr. Hangley sought to determine whether Hagens Berman committed misconduct when it concluded an agreement with GlaxoSmithKline by which the Plaintiffs in several dozen thalidomide cases would withdraw their complaints against GSK in return for the Company not seeking additional sanctions against Hagens Berman. (Doc. No. 396.) This agreement was concluded shortly after I appointed Mr. Hangley, who had ordered Plaintiffs to disclose when they had first learned that they had suffered thalidomide injuries. Mr. Hangley later learned that a Firm partner had altered expert reports to persuade (apparently dishonestly) two Plaintiffs to withdraw their suits against all Defendants. Presumably that is why Mr. Reich has opined, *inter* alia, that the Firm's present

2

investigation complied with the Code of Professional Conduct. In these circumstances, to argue that all Defendants are not the Firm's "adversaries" or "participants" in the proceedings before Mr. Hangley is simply wrong.

### Conclusion

Hagens Berman plainly wishes to use the work product privilege as a shield—protecting its materials from public disclosure—and a sword—using the materials to show that it did not commit misconduct. This is impermissible. In re Chevron Corp., 650 F.3d 276, 287 (3d Cir. 2011). I will accordingly overrule Hagens Berman's objections.

**IT IS SO ORDERED.**

*/s/ Paul S. Diamond*

May 24, 2021
Paul S. Diamond, J.

3

**MOTION FOR STAY OF DISTRICT COURT'S APRIL 22, 2026 ORDER DIRECTING SPECIAL DISCOVERY MASTER TO PUBLICLY DOCKET HEARING MATERIALS CONTAINING ATTORNEY OPINION WORK-PRODUCT**

## Exhibit D

Hagens Berman Sobol Shapiro LLP's Expedited Motion for Stay as to This Court's April 22, 2026 Order Pertaining to Attorney Work Product (DDE 905)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLENDA JOHNSON, et al. | Civ. No. 2:11-cv-05782-PD |
| v. | |
| | AND ALL RELATED CASES |
| SMITHKLINE BEECHAM CORPORATION, et al. | |

## HAGENS BERMAN SOBOL SHAPIRO LLP'S EXPEDITED MOTION FOR STAY AS TO THIS COURT'S APRIL 22, 2026 ORDER PERTAINING TO ATTORNEY WORK-PRODUCT

Hagens Berman Sobol Shapiro LLP ("the Firm"), in accordance with this Court's Order (Doc. No. 902) of April 22, 2026, respectfully move this Court to stay that portion of the Court's Order directing the Special Master to file publicly the 2017 and 2019 hearing transcripts and exhibits no earlier than May 22, 2026, to allow the Firm to seek appellate review. In support of this Motion, the Firm relies on and incorporates by reference the Memorandum of Law submitted herewith.

Dated:  May 13, 2026

Respectfully submitted,

**SAXTON & STUMP, LLC**

*/s/ Christopher C. Conner*
Christopher C. Conner, Esq.
Pennsylvania Bar No. 36407
4250 Crums Mill Road, Suite 201
Harrisburg, PA 17112
Office: 717-216-5522
Fax:  717-547-1900
cconner@saxtonstump.com

**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI LLP**

Gaetan J. Alfano, Esq.
Pennsylvania Bar No. 32971
Peter St. Tienne Wolff, Esq.
Pennsylvania Bar No. 208433
1818 Market Street, Suite 3402
Philadelphia, PA 19102
Telephone: (215) 320-6200
Facsimile: (215) 981-0082
PSW@pietragallo.com
GJA@pietragallo.com

**COPPERSMITH BROCKELMAN PLC**

Keith Beauchamp, Esq. (*pro hac vice*)
Marvin C. Ruth, Esq. (*pro hac vice*)
Malvika A. Sinha, Esq. (*pro hac vice*)
2800 North Central Avenue, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 381-5490
Facsimile: (602) 224-6020
kbeauchamp@cblawyers.com
mruth@cblawyers.com
msinha@cblawyers.com

*Counsel for Movant Hagens Berman
Sobol Shapiro LLP*

2

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that on May 13, 2026, a true and correct copy of Hagens Berman Sobol Shapiro LLP's Expedited Motion for Stay as to This Court's April 22, 2026 Order Pertaining to Attorney Work-Product and the accompanying Memorandum of Law in support thereof were filed electronically and served on all counsel of record via the Court's CM/ECF system.   Undersigned counsel further certifies that a true and correct copy of said documents are being served this day on the following by electronic mail:

Terrie Bolton
tmixon922@gmail.com

John Marshall
jmarshall.marshall9@gmail.com

Jose Navamuel
josenavamue@gmail.com

Carolyn Sampson
cafsampson@gmail.com

/s/ Christopher C. Conner
Christopher C. Conner, Esq.
Pennsylvania Bar No. 36407
4250 Crums Mill Road, Suite 201
Harrisburg, PA 17112
Office: 717-216-5522
Fax:   717-547-1900
cconner@saxtonstump.com

*Counsel for Movant Hagens Berman
Sobol Shapiro LLP*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GLENDA JOHNSON, et al., | Case No. 2:11-cv-05782-PD |
| Plaintiffs, | |
| v. | AND ALL RELATED CASES |
| SMITHKLINE BEECHAM CORPORATION, et al. | |
| Defendants. | |

**HAGENS BERMAN SOBOL SHAPIRO LLP'S MEMORANDUM OF LAW IN SUPPORT OF EXPEDITED MOTION FOR STAY AS TO THIS COURT'S APRIL 22, 2026 ORDER PERTAINING TO ATTORNEY WORK-PRODUCT**

Hagens Berman Sobol Shapiro LLP, by and through its undersigned counsel, submits this Memorandum of Law in Support of its Expedited Motion for Stay as to this Court's April 22, 2026 Order Pertaining to Attorney Work-Product.

## I. INTRODUCTION

In accordance with this Court's April 22, 2026 Order (the "April 2026 Order"), Hagens Berman Sobol Shapiro LLP (the "Firm") respectfully requests that this Court stay that portion of the Order (Doc. No. 902) directing the Special Master to file publicly the 2017 and 2019 hearing transcripts and exhibits no earlier than May 22, 2026. The Firm intends to seek appellate review, challenging both that portion of the April 2026 Order, as well as the waiver finding in this Court's May 24, 2021

Order (Doc. No. 749) (the "May 2021 Order").[1] In the May 2021 Order, this Court ruled that the Firm waived work product privilege when it provided an expert witness with "materials" related to *in camera* hearings concerning withdrawal motions for the purpose of informing the expert's opinion, which was to be expressed in subsequent *in camera* hearings on those withdrawal motions. Respectfully, this was an error of law, for the reasons set out below.

The Firm requests a stay until the Third Circuit can review these Orders or separately consider whether a stay is appropriate. This approach, which is consistent with that taken by this Court while the June 2024 mandamus petition was pending, (Doc. No. 823), will prevent publication of the Firm's work product while the maintenance of that privilege is evaluated by the Court of Appeals. As explained below, the Firm believes that appellate review of this Court's waiver-related orders is likely to be successful. Absent a stay, the Firm's opinion work product will—

---

[1] The Court previously determined that an attempt to challenge the May 2021 Order in the absence of a companion order directing the public docketing of the transcripts and exhibits was "needlessly premature." (*See* Doc. No. 823.) The April 2026 Order now marries and renders operative the May 2021 Order with a direction to the Special Master to docket the hearing materials. (*See* Doc. No. 902 at 4.) Accordingly, the April 2026 Order has the effect of making the May 2021 Order ripe for appellate review. This conclusion is consistent with the Third Circuit's ruling on the June 2024 mandamus petition, which was denied without prejudice, because "the District Court has not ordered the transcripts to be published on the public docket, thus, this element of the petition is not ripe and DENIED without prejudice." *See In re: Hagens Berman Sobol Shapiro, LLP*, No. 24-2167, Doc. 27-1 at 1.

potentially as soon as May 22, 2026—be disclosed by publication of the 2017 and 2019 transcripts and exhibits on the public docket.[2] This would cause irreparable and immediate harm not only to Plaintiffs whose substantive claims remain pending in the underlying litigation but also to the Firm. As the Third Circuit has recognized, appellate review of a privilege determination after disclosure has occurred "is an inadequate remedy" because disclosure "destroys the right sought to be protected." *See Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 591 (3d Cir. 1984). "[T]o delay review in such cases is to deny it altogether." *Id.* Moreover, in this case, issuance of a stay will not harm any other party to this litigation and will further an important public interest.

## II.    ARGUMENT

It is well established that "[e]ach court has the inherent power to control its own docket to promote fair and efficient adjudication." *United States ex rel. Brown v. Pfizer, Inc.*, No. CV 056795, 2017 WL 2691927, at *5 (E.D. Pa. June 22, 2017) (granting stay pending resolution of interlocutory appeal); *see also AstenJohnson v. Columbia Cas. Co.*, No. CIVA 03-1552, 2006 WL 1805979, at *2 (E.D. Pa. June 29, 2006) (staying proceedings pending outcome of mandamus petition). The four factors that govern the issuance of a stay pending appeal are: "(1) whether the stay

---

[2] The Court has ruled that attorney-client privileged material will be redacted from the transcripts and exhibits. The Firm will not challenge that ruling.

applicant has made a strong showing of the likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially harm other parties with an interest in the litigation; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The first two factors—likelihood of success and of irreparable injury, respectively— are the most critical. *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015). Once a stay applicant satisfies those factors, the Court must "balance the relative harms considering all four stay factors using a sliding scale approach." *Id.* at 571. Here, all four factors support a stay.

### 1.    Appellate review is likely to be successful on the merits.

To establish a likelihood of success on the merits, the movant must show "a reasonable chance, or probability, of winning. Thus, while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not." *Revel*, 802 F.3d at 568–569 (cleaned up). Here, appellate review of this Court's waiver determination has a reasonable chance of being successful because—consistent with controlling Third Circuit law— the Firm did not disclose work product-privileged material to the Plaintiffs' adversaries, *i.e.*, the Defendants.

In discussing waiver of the work-product privilege, the Third Circuit has observed that "Because the work-product doctrine serves instead to protect an

4

attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine." *Westinghouse Elec. Crop. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991). Instead, "the purpose of the work-product doctrine requires us to distinguish between disclosures to adversaries and disclosures to non-adversaries." *Id.* Thus, under Third Circuit law, whether a party is disclosing privileged materials to an adversary, or in a manner which necessarily enables an adversary to gain access, is the critical inquiry.

Here, the waiver determination was based on the Firm's disclosure of the 2017 and 2019 hearing materials to Mr. Reich. (Doc. 749 at 2). The Third Circuit has been clear, however, that mere "disclosure to a third party does not necessarily waive the protection of the work-product doctrine," and that the relevant inquiry instead is whether "the disclosure…enable[s] *an adversary* to gain access to the information." *Westinghouse Elec. Corp*, 951 F.2d at 1428 (emphasis added). Accordingly, a work-product waiver based solely on *any* disclosure is incorrect.

Over the Firm's objections, the Defendants were determined to be "both the Firm's adversaries and participants in" the withdrawal motion proceedings. (Doc. No. 749 at 2; Doc. No. 902 at 1–2 (extending determination to hearing exhibits).) At the time of the Reich report, however, the Defendants had disclaimed any interest in participating in the 2017 proceedings (Doc. No. 546), and when they later sought

5

to participate in the 2019 proceedings over the objections of the Firm and the withdrawal Plaintiffs, it was not with respect to the withdrawal issue (the only topic on which Mr. Reich was opining). Plus, in 2019, the Defendants agreed that privileges (outside the Weaver-related crime-fraud exception) would be preserved. (Doc. No. 602.) Thus, the Defendants were not adversaries to or against whom Mr. Reich's opinion related or was offered.[3]

While not articulated as an express basis for its waiver determination, the Court has also observed that the Firm is trying to use the work product privilege as a "sword and shield" to defeat sanctions. (Doc. No. 749 at 3; Doc. No. 823 at 2 .) That observation, too, is in error, for many of the same reasons as above—the Firm commissioned Mr. Reich's opinion to support its motions to withdraw, (Doc. No. 718 at 9-10), and Mr. Reich did not opine on sanctions. *See supra* at pp. 5–6.

For all of these reasons, the Firm is likely to succeed on the merits of its arguments regarding work-product waiver.

---

[3] This reasoning is also consistent with post-*Westinghouse* law on waiver. The Third Circuit recently observed that "[c]ourts consider whether 'one party t[ook] advantage of another' and if partial disclosure created an 'unfair advantage' when deciding whether partial disclosure forfeits a privilege as to all or some privileged information." *In re Zohar III Corp.*, No. 23-2549, 2024 WL 1929021, at *4 (3d Cir. Apr. 23, 2024) (citing *Westinghouse*, 951 F.2d at 1426 n.12 and *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007)). Given that the Defendants themselves had disclaimed any interest in the Reich report, they recognized that the report—offered solely in support of the Firm's motions to withdraw—did not give the Plaintiffs an unfair advantage over them.

2.    **Irreparable injury is likely absent a stay.**

A stay movant must demonstrate that irreparable injury is likely absent a stay. *See Hilton*, 481 U.S. at 776. Irreparable injury means a "harm that cannot be prevented or fully rectified by a successful appeal." *Revel*, 802 F.3d at 568. The Third Circuit has recognized that "when a district court orders production of information over a litigant's claim of privilege not to disclose…compliance with the production orders complained of destroys the right sought to be protected." *Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 461 (3d Cir. 1996). Thus, the "irreparable injury" factor is satisfied if the enforcement of an existing order requires disclosure of work product privileged materials. *See, e.g., Apple Inc. v. Samsung Elecs. Co.*, 2015 WL 13711858, at *1 (N.D. Cal. Apr. 7, 2015) (stay warranted pending appeal where it would protect litigant "from the wrongful and irrevocable compelled disclosure of its privileged information[.]").

Revealing to the Defendants and the public the Plaintiffs counsel's mental impressions with respect to currently pending cases is plainly harmful and irreparable. Plaintiffs should not be forced to litigate against Defendants who have obtained mental impressions, conclusions, opinions and legal theories of their counsel. Nor should counsel be disadvantaged. Moreover, publication of unredacted (as to work product) versions of the transcripts and exhibits on the public docket would forever destroy the privilege. *Hahnemann*, 74 F.3d at 461. If the May 22,

2026 deadline is not stayed, the Firm and its clients will realize no benefit from appellate review, as the privilege for the documents will have been destroyed and the damage done.

### 3.    A stay will not substantially harm any other party.

Once the Firm has established the first two factors, the Court must employ a "sliding scale" approach to balance any relative harms. *Revel*, 802 F.3d at 571. Here, the third factor—substantial harm to any other party—also favors a stay. No other party with an interest in this litigation will be substantially harmed by a stay. There are no impending trial or motion deadlines; indeed, the April 2026 Order does not involve underlying claims against thalidomide manufacturers but rather an ancillary investigation into whether the Firm's motions to withdraw from representation of certain Plaintiffs should be granted. (Even assuming this Court's presumption that Mr. Reich's opinion related to sanctions is correct, no party has moved for sanctions, so no party would be harmed by a delay.) Moreover, if the Firm eventually is unsuccessful before the Third Circuit, the materials can be filed on the public docket at a later date. Indeed, this Court previously granted a stay pending appellate review (Doc. No. 823), and no party has suggested that doing so caused any substantial harm.

8

**4.     A stay is in the public interest.**

Finally, the public interest factor also weighs in favor of a stay.  The work product privilege allows attorneys to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."  *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).  In this way, it "promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients."  *In re Grand Jury*, 705 F.3d 133, 151 (3d Cir. 2012) (quoting *In re Chevron Corp.*, 633 F.3d 153, 164 (3d Cir. 2011)).  Publishing the Firm's work product on the public docket would undermine these important interests and have a chilling effect on attorneys' abilities to represent their clients.

## III.   CONCLUSION

Accordingly, the Firm respectfully requests that this Court grant the Firm's Motion and stay the April 2026 Order to allow the Firm to seek appellate review regarding the work-product waiver issue.

Dated:  May 13, 2026

Respectfully submitted,

**SAXTON & STUMP, LLC**

*/s/ Christopher C. Conner*
Christopher C. Conner, Esq.
Pennsylvania Bar No. 36407
4250 Crums Mill Road, Suite 201
Harrisburg, PA 17112
Office: 717-216-5522
Fax:   717-547-1900
cconner@saxtonstump.com

**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI LLP**

Gaetan J. Alfano, Esq.
Pennsylvania Bar No. 32971
Peter St. Tienne Wolff, Esq.
Pennsylvania Bar No. 208433
1818 Market Street, Suite 3402
Philadelphia, PA 19102
Telephone: (215) 320-6200
Facsimile: (215) 981-0082
PSW@pietragallo.com
GJA@pietragallo.com

**COPPERSMITH BROCKELMAN PLC**

Keith Beauchamp, Esq. (*pro hac vice*)
Marvin C. Ruth, Esq. (*pro hac vice*)
Malvika A. Sinha, Esq. (*pro hac vice*)
2800 North Central Avenue, Suite 1900
Phoenix, AZ  85004
Telephone: (602) 381-5490
Facsimile: (602) 224-6020

kbeauchamp@cblawyers.com
mruth@cblawyers.com
msinha@cblawyers.com

*Counsel for Movant Hagens Berman
Sobol Shapiro LLP*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLENDA JOHNSON, et al. | Civ. No. 2:11-cv-05782-PD |
| v. | |
| SMITHKLINE BEECHAM CORPORATION, et al. | AND ALL RELATED CASES |

## [PROPOSED] ORDER

**AND NOW**, on this _____ day of May, 2026, upon consideration of Hagens
Berman Sobol Shapiro LLP's Expedited Motion for Stay as to this Court's April 22,
2026 Order Pertaining to Attorney Work-Product, and any responses thereto, it is
hereby ORDERED that the Motion (Doc. No. __) is GRANTED, and the Court's
April 22, 2026 Order (Doc. No. 902) is STAYED pending appellate review thereof
and shall remain stayed through final resolution of proceedings before the United
States Court of Appeals for the Third Circuit.  The Special Master shall not file the
2017 and 2019 hearing transcripts and exhibits addressed in the April 22, 2026 Order
to the docket until further directed by the undersigned.

BY THE COURT:

_____
HON. PAUL S. DIAMOND
UNITED STATES DISTRICT
COURT JUDGE

**MOTION FOR STAY OF DISTRICT COURT'S APRIL 22, 2026 ORDER DIRECTING SPECIAL DISCOVERY MASTER TO PUBLICLY DOCKET HEARING MATERIALS CONTAINING ATTORNEY OPINION WORK-PRODUCT**

**Exhibit E**
Order of May 13, 2026 (DDE 906)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLENDA JOHNSON, *et al.*,     :
            :
v.           :  Civ. No. 11-5782
            :  **and all related cases**
SMITHKLINE BEECHAM    :
CORPORATION, et al.     :

## O R D E R

**AND NOW**, this 13th day of May, 2026, upon consideration of Hagens

Berman's Expedited Motion for Stay (Doc. No. 905), it is hereby **ORDERED** that

any interested party respond to the Motion **no later than** Tuesday, May 19, 2026,

at **12:00 p.m.**

AND IT IS SO ORDERED.

_____
Paul S. Diamond, J.

**MOTION FOR STAY OF DISTRICT COURT'S APRIL 22, 2026 ORDER DIRECTING SPECIAL DISCOVERY MASTER TO PUBLICLY DOCKET HEARING MATERIALS CONTAINING ATTORNEY OPINION WORK-PRODUCT**


**Exhibit F**

Findings and Order of the Special Discovery Master of May 18, 2021 (DDE 742)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| GLENDA JOHNSON ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 2:11-cv-05782-PD |
| v. | ) | and all related cases |
| | ) | |
| SMITHKLINE BEECHAM CORPORATION ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**FINDINGS AND ORDER OF THE SPECIAL DISCOVERY MASTER**

I am ruling on certain privilege issues in advance of resumption of the hearing scheduled for Monday, May 24, 2021.  An Opinion will follow.

1.  Hagens Berman Sobel Shapiro LLP ("Hagens Berman") has waived attorney work product protection by giving its proposed testifying expert witness access to facts and data – the transcripts of proceedings and exhibits received partly *in camera* by the Special Discovery Master (the "Hearing Materials") – that might otherwise have remained protected.  Fed. R. Civ. P. 26(a)(2)(B).

2.  The proposed testifying expert has acknowledged in his report (the "Expert Report") that he considered the Hearing Materials in forming his opinion and preparing the Expert Report.

3.  The attorney-client privileges of individual past or present clients of Hagens Berman or the firm's former co-counsel, Kay Gunderson Reeves, were not waived or lost by the attorneys' self-serving disclosure of privileged communications to the proposed testifying expert witness because the disclosures

were not authorized and were not in Hagens Berman's clients' interests. *See* Restatement (Third) of the Law Governing Lawyers § 79 and Comment c.

a.      I am filing with the Clerk's office a partially-redacted copy of the Expert Report (the "Redacted Expert Report") for docketing and service. For the avoidance of any doubt, the Redacted Expert Report shall be delivered to the following making use of the Courts ECF docketing and service system or, if necessary, other means:

i.      The testifying expert witness;

ii.     All Defendants;

iii.    The Plaintiffs and former Plaintiffs participating or entitled to participate in this hearing, *i.e.,* Richard Anderson, Terrie Bolton, Diana Cabcabin, John Marshall, Jose Navamuel, Carolyn Sampson and Mary Sells;

iv.     Kay Gunderson Reeves;

v.      Tyler Weaver; and

vi.     Hon. Paul Diamond, U.S.D.J.

4.      Upon careful review of the Hearing Materials and the Expert Report over a period of several months, the only redactions to be made from the Expert Report presented to the Special Master on April 15, 2020, are:

a.      *Page 8, last ¶, a sentence beginning "Although some of the plaintiffs."* That sentence contains an assertion of fact that can only have come from an attorney-client communication uttered in the course of obtaining legal services.

a.   *Page 9, first full ¶, a sentence beginning "The same."* It presents a close question as to the states of mind of the Plaintiffs with respect to the involvement of Thalidomide in their injuries.

b.   *Page 9, first full ¶, a sentence beginning "There was no internet."* The sentence contains a phrase beginning "no indication that these . . . ." That phrase, running to the end of the sentence, could rest on either speculation on the expert's part or actual attorney-client communications. I will redact it, at least for the time being, out of an abundance of concern for the attorney-client privilege.

c.   *Page 10, second full ¶, a sentence beginning "Hagens Attorney."* The sentence contains a nine-word phrase beginning "at least." That sentence may or may not be attorney-client communication-dependent, and I will redact it out of the same abundance of caution.

5.   I will file of record but under seal an unredacted copy of the Expert Report.

In due course, I will review the Hearing Materials (*i.e.* the transcripts of testimony from 2017 and 2019 and the related exhibits) anew in light of Hagens Berman's waiver.

May 18, 2021

/s/ William T. Hangley
WILLIAM T. HANGLEY
SPECIAL DISCOVERY MASTER

**MOTION FOR STAY OF DISTRICT COURT'S APRIL 22, 2026 ORDER DIRECTING SPECIAL DISCOVERY MASTER TO PUBLICLY DOCKET HEARING MATERIALS CONTAINING ATTORNEY OPINION WORK-PRODUCT**


**Exhibit G**

Memorandum of the Special Discovery Master of May 20, 2021 (DDE 746)

**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GLENDA JOHNSON ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 2:11-cv-05782-PD |
| v. ) | and all related cases |
| ) | |
| SMITHKLINE BEECHAM CORPORATION ) | |
| ET AL., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**
**OF THE SPECIAL DISCOVERY MASTER**

## I.   Introduction

On Tuesday, May 18, 2021, the Special Discovery Master entered an Order, ECF 742, as

follows:

1.   Hagens Berman Sobel Shapiro LLP ("Hagens Berman") has waived attorney

work product protection by giving its proposed testifying expert witness access to

facts and data – the transcripts of proceedings and exhibits received partly *in*

*camera* by the Special Discovery Master (the "Hearing Materials") – that might

otherwise have remained protected.  Fed. R. Civ. P. 26(a)(2)(B).

2.   The proposed testifying expert has acknowledged in his report (the "Expert

Report") that he considered the Hearing Materials in forming his opinion and

preparing the Expert Report.

3.   The attorney-client privileges of individual past or present clients of Hagens

Berman or the firm's former co-counsel, Kay Gunderson Reeves, were not

waived or lost by the attorneys' self-serving disclosure of privileged

communications to the proposed testifying expert witness because the disclosures were not authorized and were not in Hagens Berman's clients' interests. *See* Restatement (Third) of the Law Governing Lawyers § 79 and Comment c.

a.  I am filing with the Clerk's office a partially-redacted copy of the Expert Report (the "Redacted Expert Report") for docketing and service. For the avoidance of any doubt, the Redacted Expert Report shall be delivered to the following making use of the Courts ECF docketing and service system or, if necessary, other means:

  i.  The testifying expert witness;

  ii.  All Defendants;

  iii.  The Plaintiffs and former Plaintiffs participating or entitled to participate in this hearing, *i.e.,* Richard Anderson, Terrie Bolton, Diana Cabcabin, John Marshall, Jose Navamuel, Carolyn Sampson and Mary Sells;

  iv.  Kay Gunderson Reeves;

  v.  Tyler Weaver; and

  vi.  Hon. Paul Diamond, U.S.D.J.

4.  Upon careful review of the Hearing Materials and the Expert Report over a period of several months, the only redactions to be made from the Expert Report presented to the Special Master on April 15, 2020, are:

a.  *Page 8, last ¶, a sentence beginning "Although some of the plaintiffs."* That sentence contains an assertion of fact that can only have come from

an attorney-client communication uttered in the course of obtaining legal services.

a.   *Page 9, first full ¶, a sentence beginning "The same."* It presents a close question as to the states of mind of the Plaintiffs with respect to the involvement of Thalidomide in their injuries.

b.   *Page 9, first full ¶, a sentence beginning "There was no internet."* The sentence contains a phrase beginning "no indication that these . . . ." That phrase, running to the end of the sentence, could rest on either speculation on the expert's part or actual attorney-client communications. I will redact it, at least for the time being, out of an abundance of concern for the attorney-client privilege.

c.   *Page 10, second full ¶, a sentence beginning "Hagens Attorney."* The sentence contains a nine-word phrase beginning "at least." That sentence may or may not be attorney-client communication-dependent, and I will redact it out of the same abundance of caution.

5.   I will file of record but under seal an unredacted copy of the Expert Report.

*   *   *

The partially-redacted version of the Expert Report (*see* no. 4 above) was filed on the public docket. ECF 743. An unredacted copy of the Expert Report (*see* no. 5 above) was filed under seal. ECF 744. This Memorandum explains my reasoning:

The immediate issue is whether a law firm that has engaged an attorney-expert witness to report and testify regarding the law firm's conduct may withhold the expert witness's report, in whole or in part, from parties to the litigation in which the testimony is offered. Larger questions that must be addressed in the process are whether the law firm waived its attorney work product

protection and its clients' attorney-client privilege by giving the proposed testifying expert access to transcripts of testimony and exhibits that were received *in camera* for the express purpose of preserving those protections.[1]

Hagens Berman, a law firm, has filed contested motions for leave to withdraw from its representation of several of its client Plaintiffs while continuing to pursue other Plaintiffs' claims in these consolidated products liability actions.

The firm has engaged an attorney expert to offer opinion testimony respecting the firm's conduct, specifically, "the propriety of the filing of, continued prosecution of, and withdrawal from the thalidomide cases." ECF 707-1, Email, Douglas E. Roberts to Special Discovery Master (Mar. 13, 2020).

After entertaining briefing by interested participants, I Ordered as quoted above (ECF 742).

## II.   Basic Principles

### A.   Attorney-client privilege

The attorney-client privilege protects communications between attorney and client, given with an expectation of confidentiality for the purpose of obtaining or providing legal, not business, advice. "[D]isclosure to a third party waives the attorney-client privilege unless the disclosure is necessary to further the goal of enabling the client to seek informed legal assistance." *In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011) (quoting *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991)).

---

[1] I refer throughout to "participants" rather than "parties" because several nonparties – Hagens Berman itself, one former Plaintiff, and two lawyers who no longer represent any parties and have withdrawn their appearances – are actively participating in their own interests, as discussed elsewhere in this Memorandum. *See* discussions *infra* at § 3(B)-(F).

## B.    Work product protection

The work product doctrine "promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. . . . [It] promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Chevron*, 633 F.3d at 164 (quoting *Westinghouse*, 951 F.2d at 1428). Accordingly, "it is only in cases in which the material is disclosed in a manner inconsistent with keeping it from an adversary that the work-product doctrine is waived." *Id.* at 165 (quoting *Westinghouse*, 951 F.2d at 1428).

## C.    Disclosure regarding testifying expert witnesses

Pursuant to Fed. R. Civ. P. 26(a)(2)(A) and (B), a party must identify a proposed testifying expert witness and submit a report that includes, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them," and "the facts or data considered by the witness in forming them." I have concluded that a non-party with an interest in the proceeding, including a movant such as Hagens Berman in this instance, has the identical obligation.

## III.    Background Facts

The participants are familiar with the serpentine history of what started out as a large group of Pennsylvania state court products liability cases brought in 2011 and 2012, was removed to this Court, and (after remand motion practice and appeals) was consolidated here before Judge Diamond. I will nevertheless discuss the background in some detail for the benefit of any reviewing court.

## A.    The Thalidomide suits

Each of the 52 original Plaintiffs asserted a separate claim that her or his expectant mother had ingested Thalidomide, a teratogen, in the late 1950s or early 1960s, causing *in utero*

injuries to each Plaintiff.  Coming fifty years and more after the alleged tortious conduct, the new lawsuits were obvious targets for dispositive time-bar motions, but the Complaints survived the initial dispositive motions with assertions that the Defendant pharmaceutical companies had fraudulently concealed material information and, additionally, that the maturing diagnostic science had only recently linked certain prenatal injuries to Thalidomide exposure.  *See* ECF 92, Order Denying Motions to Dismiss.

**B.     The early losses, the sanctions motions, the Plaintiff-side review, and the contested motions to withdraw**

I fast-forward to the summer and autumn of 2014.  By then, those Plaintiffs whose individual claims had come to the Court's attention had not fared well at all.[2]  As discovery crept forward, Defendants were filing motion after dispositive motion asserting that a given Plaintiff's actual medical history, notice, or state of mind was materially different from what was alleged in a Complaint that had been expressly sworn to by the Plaintiff's attorneys in the state court.  The Court's concerns about the possibility of bad-faith litigation and evasive discovery tactics is evident from the Court's Order proposing my appointment as Special Discovery Master.  ECF 239 (June 17, 2014).

With several cases already lost, massive discovery pushing up against a looming discovery deadline, three fully-briefed sanctions motions ripe for decision and more such motions threatened, Hagens Berman and Defendants' counsel stipulated to an Order (ECF 268) requiring the firm to conduct an internal investigation of its clients' claims.  Hagens Berman would "investigate each of the remaining active cases in these consolidated actions with a view to making a decision whether it should continue to be prosecuted or dismissed with prejudice by

---

[2] *See* ECF 183 (voluntary dismissals with prejudice of three Plaintiffs' claims) (Apr. 14, 2014): ECF 265 (summary judgment against Plaintiff Jack Merica) (July 14, 2014).

consent." ECF 268 at 1. During the summer and fall of 2014, several of Hagens Berman's clients did voluntarily dismiss their claims. One such Plaintiff was Diana Cabcabin, whose claims were dismissed in October 2014. ECF 373.

But Hagens Berman and its Plaintiff clients did not, it seems, always see eye-to-eye, and Hagens Berman wound up filing contested motions for leave to withdraw from its representation of six Plaintiffs.[3] In each case, Hagens Berman cited "professional considerations" as the basis for its motion, without going into detail. I was ordered to address the withdrawal motions and report and recommend to the District Court. ECF 532.

### C. The *in camera* hearing arrangements

The original uncontroversial decision to hear the withdrawal motions *in camera*, excluding Defendants from participating, was bottomed in obvious concerns – preserving the five[4] Plaintiffs' attorney-client privileges with respect to their conversations with the attorneys who were now turning their backs, and protecting Hagens Berman's privileged work product from disclosure to Defendants.[5] Importantly, *in camera* treatment was not based on the Plaintiffs' personal or medical privacy considerations; they had given up those claims to privacy

---

[3] *See* ECF 207 (John Marshall), 301 (Jose Navamuel), 342 (Terrie Bolton), 343 (John Skelton, III), 375 (Richard Anderson), 382 (Mary Sells). Of the six Plaintiffs who opposed Hagens Berman's motions to withdraw: One, Mr. Skelton, has passed away, ending his case and mooting Hagens Berman's motion. Another, Mr. Anderson, cannot be located; mailed notices addressed to his last known address are being returned by the postal authorities. A third, Ms. Bolton, has decided to pursue her case *pro se.* A fourth, Mr. Marshall, has also entered his appearance *pro se*, but continues to oppose the withdrawal, as do Plaintiffs Navamuel and Sells.

[4] References to the "five Plaintiffs" are to the Plaintiffs who opposed Hagens Berman's motions to withdraw minus Plaintiff Skelton, who (as noted above) passed away during the pendency of this action (ECF 551, 563).

[5] Any decision to proceed *in camera* must be weighed against important private and public interests. *See, e.g., United States v. Simone.* 14 F.3d 833 (3d Cir. 1994). Mine was facilitated by Defendants' agreement not to participate (ECF 546).

by bringing lawsuits putting their physical conditions, medical histories, and personal family dynamics and histories at issue.[6]

## D.    What, when, and why-so-late questions

In this Court, a relevant consideration in a contested withdrawal motion is whether the disaffected attorney knew or should have known, before accepting the engagement, of the conditions or events he is now proffering as grounds for abandoning ship. In amending the scope of my appointment to include these withdrawal motions, Judge Diamond ordered that

> Mr. Hangley must evaluate, *inter alia*, when Hagens Berman first learned that the firm's continuing prosecution of these cases would purportedly be untenable under Rule 1.16(a)(1) of the Pennsylvania Rules of Professional Conduct. See *Chester v. May Dep't Store Co.*, No. CIV. A. 98-5824, 2000 WL 12896, at \*1 (E.D. Pa. Jan. 7, 2000) (significant consideration in deciding withdrawal motion is whether "[t]here [was] no suggestion that counsel was unaware of his client's history and propensities when he accepted the representation and proceeded to litigate this matter.").

ECF 532 at 3. The "professional considerations" supporting the withdrawal motion in the *Chester* case cited by the Court had involved a client's mercurial temperament and a professed attorney-client incompatibility. In the present personal injury cases, I thought Hagens Berman's "professional considerations" would likely be bottomed on difficulties of proof similar to those that had already led to so many dismissals, and that the what, when, why questions would have to be asked. In my own follow-up order, I stressed that the Hagens Berman attorneys would have "an opportunity (i) to flesh out . . . the assertion that 'professional considerations require that Plaintiffs' counsel withdraw . . .'; (ii) to establish that the firm was unaware of the problem

---

[6] This point is addressed in greater detail in, *e.g.*, ECF 644, Report and Recommendation (Dec. 21, 2018) at 10-11 (citing *Williams v. Rene*, 72 F.3d 1096, 1103 (3d Cir. 1995); *In re Asbestos Prod. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 155 (E.D. Pa. 2009)) (other citations omitted).

when it filed its clients' Complaints; (iii) to explain how the firm learned of the problem; and (iv) to explain the failure to know about it earlier." ECF 539 at 2.

### E.      The first hearing days and their aftermath

The first three days of the hearing, conducted entirely *in camera* in September 2017, led to a significant expansion in the scope of my inquiries.

First, much of Hagens Berman's evidence adduced during the September 2017 hearing sessions was very general, and dealt with the entire group of 52 claims that were brought, along with an unspecified number that were considered and not brought. But even as a high-level review, the testimony was not terribly informative on the what, when, why-so-late questions mentioned above.

Second, the testimony established that Hagens Berman stepped into an ongoing process in which a non-Hagens Texas attorney, Kay Gunderson Reeves (then of the law firm of Gordon & Reeves), had already done a good deal of the initial investigation of potential claims and claimants on which the Hagens Berman lawyers would rely in drafting complaints and verifying allegations under penalty of perjury when filing suits in the Philadelphia Court of Common Pleas. Ms. Reeves stayed on as Hagens Berman's co-counsel for a period of time, but had long since withdrawn from all the cases. It became apparent that, in addition to Hagens Berman attorneys' diligence and fealty to the rules, I would also have to inquire into Ms. Reeves' pre-suit investigations and related matters, and that I would have to review files in her custody in pursuing my "what, when, and why" questions.

Those first three hearing days also begat discovery demands by Plaintiffs Bolton and Sells,[7] and Hagens Berman's undertaking to produce relevant documents. And that development, in turn, would open yet another area of inquiry.

## F.    False documents and false testimony

Plaintiffs Bolton's and Sells' mid-hearing discovery yielded stunning evidence: A Hagens Berman attorney had forged documents, lied to his client about one of them, given false testimony in my hearing three years later, and placed one of the false documents in evidence, passing it off as the McCoy. Here is what happened:

The goal of Hagens Berman's case-by-case review process discussed above was, obviously, to cull the cases that seemed weakest and avoid further sanctions litigation. In at least some instances, Hagens Berman would ask a Plaintiff to submit to a physical examination by Hagens Berman's testifying expert anatomist-embryologist, Trent Stephens, PhD, who would then informally opine to Hagens Berman as to the likelihood that the particular Plaintiff's prenatal injuries were Thalidomide-related.[8] But a Hagens Berman partner, Tyler Weaver, had falsified Dr. Stephens' expert evidence. After examining Plaintiff Bolton and, separately, then-

---

[7] The five Plaintiffs were scattered across the country and, in the context of the withdrawal motions, were effectively appearing *pro se*. Accordingly, I offered to attempt to recruit *pro bono* home-state counsel for those of them who desired it. Phoenix attorney Cindy Albracht-Crogan and Cleveland attorney David Weiner have generously and ably represented Plaintiffs Bolton and Sells, respectively, as *pro bono* counsel on the withdrawal motions. They have not undertaken to succeed Hagens Berman in the underlying Thalidomide litigation.

[8] Dr. Stephens is an Emeritus Professor of Anatomy and Embryology in the Department of Biological Sciences at Idaho State University. He is a classic two-hat expert for Hagens Berman, advising the firm in its evaluation of cases and submitting expert reports and testifying in opposition to Defendants' dispositive motions. *See, e.g.*, ECF 262-7 (Declaration of Dr. Stephens in support of Plaintiff Andre's opposition to summary judgment); ECF 330-2 (Declaration of Dr. Stephens in support of Plaintiff Sampson's opposition to summary judgment).

Plaintiff Cabcabin, Dr. Stephens had emailed reports on his examinations and analyses to Mr. Weaver. The reports were written and emailed as Microsoft Word documents.

After receiving these two reports, Mr. Weaver secretly tampered with the manuscripts, deleting parts of Dr. Stephens's report in a manner that certainly made Dr. Stephens appear more pessimistic about the prospects for successful claims.

The evidence at the hearing would establish – and Mr. Weaver would ultimately testify – that Mr. Weaver used the fiddled Stephens-Bolton document in his unsuccessful campaign to persuade Ms. Bolton to drop her case. Mr. Weaver also changed former Plaintiff Cabcabin's examination report, but she appears to have agreed to drop her case without ever seeing the forged document. Ms. Cabcabin became involved in my inquiries only as a result of the revelation of Mr. Weaver's document-tampering.

Three years later, testifying before me in support of his firm's motion to withdraw from Ms. Bolton's representation, Mr. Weaver placed the same doctored exhibit in evidence[9] and swore to its bona fides.

My inquiries into Mr. Weaver's conduct were obviously connected to the motions to withdraw but, just as obviously, Mr. Weaver and Hagens Berman were not entitled to invoke privilege with respect to his conduct,[10] which meant that the remaining hearing sessions had to

---

[9] Formally, it was Hagens Berman that offered Mr. Weaver, then a member of the firm, as a witness, and put the bogus document in evidence. But the evidence does not suggest anyone at the firm other than Mr. Weaver was aware of its falsity, or that the firm knew of his conduct.

[10] I based this decision on the crime-fraud exception to the attorney-client privilege, but noted that "[a]nother way of arriving at the same end result is by simply concluding that an attorney who is misleading his client does not even have an attorney-client relationship, so there is no privilege to be waived." ECF 644 at 14; *Johnson v. SmithKline Beecham Corp.*, No. CV 11-5782, 2019 WL 4233629, at *8 (E.D. Pa.) (Special Discovery Master's Dec. 21, 2018 Rep. & Rec.), *approved and adopted, id.* at *1 (Feb. 14, 2019)).

be held at least partially in open court and were likely to have implications far beyond the narrow context of Hagens Berman's motion to cut Ms. Bolton loose.

## G.    Another unhappy plaintiff and an explicit waiver of privilege

During this same interim period, another Plaintiff, Carolyn Sampson, began publicly accusing Hagens Berman and Ms. Reeves of misleading her about the litigation and its prospects (she later sued them), and explicitly waived her attorney-client privilege. Her testimony, also relevant to the withdrawal motions, had to be received in open court.

## H.    The return of Defendants

In a simpler time, Defendants had agreed to waive access to the *in camera* proceedings. Now they moved for access to "all prior transcripts and filings, with redactions for privilege as necessary, and access to and involvement in the proceedings going forward." ECF 602. They were granted only partial relief; they were given leave to participate in some of the future proceedings, but they have not been given access to any part of the 2017 hearing materials. *See* ECF 644 at 16 (Dec. 21, 2018 Report & Recommendation); ECF 662 (Feb. 14, 2019 Order approving and adopting Report & Recommendation); *Johnson*, 2019 WL 4233629 at *1, *8-*9.

Making those Recommendations, I considered and discussed the possibility that the five Plaintiffs' attorney-client privilege (or at least Ms. Bolton's and Ms. Cabcabin's) had been lost as a result of Weaver's conduct, and my desire to avoid that result to the greatest possible extent:

> [T]he present cases demonstrate the potential unfairness of completely obliterating the innocent client's privilege simply because her attorney chose to snooker her. Here, eradicating the privilege in its entirety would create an informational windfall for the Defendants, solely because of the suspected self-serving conduct of the attorneys at the expense of their clients.
>
> \*    \*    \*
>
> In the context of these proceedings, then, evidence tending to show fraudulent behavior on the part of the attorneys – Hagens Berman

> or Ms. Reeves – should be made available to Defendants and the public, while evidence that would typically be considered privileged – the communications between attorney and client, and the attorney's work product – should remain protected if they are not pertinent to the alleged criminal, fraudulent or unethical conduct of the attorneys. I will review all documents produced in advance with a view to this distinction before releasing them to anyone other than the affected Plaintiff and her counsel. And each of the Plaintiffs and their counsel (if any), as well as Hagens Berman, Ms. Reeves, and, I think, Mr. Weaver, will . . . "be afforded an opportunity to raise pertinent privilege challenges and to have them resolved pursuant to established procedures."

ECF 644 at 14-16 (quoting *In re Impounded Case (Law Firm)*, 879 F.2d 1211, 1213-15 (3d Cir. 1989)).

All these events assured that the second set of hearings would have to be choreographed even more closely than the first. The proceedings of May 7-10, 2019, were conducted partly *in camera* and partly open to the public, and featured on-the-spot courtroom evacuations as the evidence veered from a Hagens Berman withdrawal motion to Mr. Weaver's digital tampering, to Hagens Berman's dealings with its anatomist, to attorney Reeves and client Sampson's widely divergent characterizations of their conversations and interactions in the early days of the litigation and thereafter. Attorneys and witnesses were ushered out of the courtroom or asked to leave their hard-won internet connections, and then rounded up to return only to be shooed out again as the proceedings moved from witness to witness or from topic to topic.

A continued session of the hearing was scheduled and repeatedly rescheduled during the ongoing pandemic, and is now scheduled to go forward on May 24, 2021.

## I.    The long redaction road

If managing the 2019 hearing sessions was somewhat complicated, the process of reviewing, sorting, redacting, and distributing the transcripts and exhibits from those sessions

(the "2019 Hearing Materials"), so that everyone got to read only what she was entitled to read, was absolutely Rubikian.

In retrospect, distributing materials from the first hearing session in September 2017 (the "2017 Hearing Materials") was relatively straightforward: At Hagens Berman's counsel's suggestion, we had arranged for an initial session involving the presentation and transcription of evidence that was not privileged, or that Hagens Berman considered likely to be privileged in favor of all the participating Plaintiffs but not in favor of any one of them against any other, followed by the separate hearing and transcription of evidence containing matter that might be privileged in favor of one Plaintiff as against the world, including the other Plaintiffs.

The transcripts were distributed accordingly, and Defendants did not get to see any of the 2017 Hearing Materials.

Managing the 2019 Hearing Materials was another thing entirely. Now we had to simultaneously honor the citizenry's interest in the business of its courts; protect so much of the confidential work product of the Plaintiffs' past and present attorneys as remained protection-worthy, and publish that which was not; and also preserve the distinct, separate privilege interests of six past or present Plaintiffs – all the while taking into account Plaintiff Sampson's express waiver of attorney-client privilege and Mr. Weaver's (and hence his former principal Hagens Berman's) forfeiture of work product protection to an extent that had not yet been precisely defined. As at the hearing itself, we were bound to juggle the sometimes competing privacy and access interests of as many as fourteen participants (seven past or present client-Plaintiffs, two law firms, a former Hagens Berman partner, a former co-counsel, and three Defendants, along with the public's right of access, as we redacted and distributed seven nonidentical iterations of the 2019 Hearing Materials.

Here is the process (*see* ECF 704):

1. Initially, in May 2019, only Judge Diamond, myself, Hagens Berman, Mr. Weaver, and Ms. Reeves were given access to the initial unredacted 2019 Hearing Materials; neither the Plaintiffs nor the Defendants were given access.

2. As a first step, my colleagues and I reviewed the 2019 Hearing Materials, line by line, for work product and attorney-client privilege. Of course, even this first step was complicated by Ms. Sampson's waiver of privilege and Weaver's forfeiture of work product protection.

3. We then forwarded markups to counsel for Hagens Berman, Mr. Weaver, and Ms. Reeves for their review, comment, and further suggested redactions.

4. Next, we reviewed and accepted or rejected those participants' suggestions, and re-redacted the 2019 Hearing Materials accordingly.

5. Now it was time for the preparation of non-identically redacted copies of the 2019 Hearing Materials. A unique set was sent to each of the five Plaintiffs, "custom-redacted" to make all evidence affected by that recipient's privilege visible to her alone and shield other Plaintiffs' privileged evidence from her eyes.

6. Each of these recipients was given an opportunity to propose additional redactions and other edits.

7. We reviewed, and I accepted or rejected these submissions.

8. It was not until May 27, 2020 that "final" edited copies of the 2019 Hearing Materials – redacting all information that I considered privileged in favor of any of the Plaintiffs, and all protectable Hagens Berman or Reeves work product that remained protection-worthy after Mr. Weaver's conduct and Ms. Sampson's

waiver – were distributed to all participants, including Defendants.[11]  In all, the review and privilege-protection process had taken a full year.  By this time, we had made several attempts to schedule a further hearing session for March, April, or later 2020 dates as the current pandemic arrived and lingered.

But while this redaction/distribution process had been going forward, it seems that Hagens Berman and its counsel were simultaneously treating the privilege-marbled hearing materials on a completely separate track and in a wholly-inconsistent manner, with unfortunate consequences.

## J.    Hagens Berman and the testifying expert

On March 13, 2020, Hagens Berman's counsel informed me by email that the firm anticipated calling a distinguished Philadelphia attorney, Abraham Reich, as "an expert witness on the propriety of the filing of, continued prosecution of, and withdrawal from the thalidomide cases at issue." ECF 707-1.

This was a strange communication in several respects.  It was sent the day after my Order (ECF 706) rescheduling the next proposed hearing sessions for the week of April 27, 2020, six weeks hence.[12]  It was not accompanied by the expert report mandated by Federal Rule of Civil Procedure 26(a)(2)(B), or even a promise to provide one.  And it was sent only to me and counsel for the two non-party lawyers whose conduct was under scrutiny, Ms. Reeves and Mr. Weaver; not one Plaintiff or Defendant was given the notice, expressly required by Rule

---

[11] I had thought Defendants might challenge some of the redactions.  Mercifully, that did not happen.

[12] As an aside, March 13, 2020 is generally thought of as the day Pennsylvania shut down for what we hoped would be a brief tussle with the virus.  That hearing, once rescheduled to resume on April 27, 2020, is now rescheduled to resume on May 24, 2021, thirteen months later.

26(a)(2)(A), that Hagens Berman intended to put Mr. Reich on the stand as an expert witness a few weeks later. Accordingly, I ordered Hagens Berman to "serve on the participants in these proceedings, as well as the Special Discovery Master, a report in compliance with Rule 26(a)(2)(B), Fed. R. Civ. P." ECF 707.

A year later, Hagens Berman has yet to comply fully with that Order.

In partial response, Mr. Reich did prepare a report (the "Expert Report") that seems to satisfy the formal requirements of Rule 26(a)(2)(B). But instead of complying with Rule 26(a)(2)(A) or with my Order to serve the Expert Report "on all participants in these proceedings," counsel served complete copies of the Expert Report on only me and counsel for those same two non-Hagens lawyers, Mr. Weaver and Ms. Reeves. Remarkably, not a single *party* has yet received a report that complies with Rule 26(a)(2)(B) or my Order. Defendants were not given any copies at all! The copies that counsel served on former and current Plaintiffs Anderson, Bolton, Marshall, Navamuel, Cabcabin, and Sells had been nonidentically and substantially redacted.

### K.    What Hagens Berman gave the expert

The Expert Report makes clear that Hagens Berman (presumably during the same period when the participants, including Hagens Berman and its counsel, were painstakingly separating the privileged from the unprivileged) gave its expert access to everything – attorney-client privileged evidence, privileged work product, everything:

> In reaching the opinions contained herein, I considered the transcripts of testimony from the hearings that took place on September 26 – 28, 2017 and May 7 – 10, 2019, the exhibits entered into evidence at those hearings, and any relevant opinions or orders issued by the Court and the Discovery Master.

Expert Report at 3.

In transmitting the Expert Report to the Special Master (and wholly or partially withholding it from others), Hagens Berman's counsel gave its reasons for its creative distribution. The Plaintiffs' respective copies of the Expert Report were said to be redacted "[c]onsistent with your prior rulings on privilege." As for Defendants:

> We have not provided copies to the pharmaceutical defendants because the report: (1) does not concern the portions of the hearings to which they have been granted access; (2) is based on testimony from which they were excluded due to privilege concerns, and (3) reveals core work product and attorney-client privileged communications.

April 15, 2020 Email from D. Roberts to Special Discovery Master (attached hereto as **Ex. 1**).

I solicited (ECF 713) and have considered extensive briefing on the questions raised by Hagens Berman's disclosure of the previously-protected materials, and what should now be done.

Hagens Berman argues that the expert has reported, and offers to testify, only on those topics that were addressed *in camera.* ECF 718. Former and current Plaintiffs have argued, variously, that all of the report remains protected (ECF 719, 727), and, by contrast, that there has been a broad subject-matter waiver of any work product protection for Hagens Berman (ECF 716). Defendants have straddled the fence, asserting that "with the understanding that the expert report will be considered solely in relation to the motions to withdraw, Defendants take no position on whether Hagens Berman has waived privilege with respect to the report or portions thereof," but that

> If the expert report were subsequently to be offered or used for any other purpose, such as the merits of these cases or requests for sanctions or costs, then Defendants must be afforded access to the full report and an opportunity for cross-examination. If that were to become necessary, Defendants would (among other things) be prepared to address a number of factual and legal errors that are apparent from the unredacted portions of that report.

ECF 725 at 1-2 and n. 1. We will address this reasoning elsewhere in this Memorandum.

## IV.    Discussion

### A.    Three layers of lawyers

As a threshold observation, I am troubled by Hagens Berman's apparent understanding that the procedural rules governing expert discovery and waiver of privilege operate to protect Hagens Berman's work product in the Thalidomide cases or the firm's efforts to withdraw from some of those cases. They do not; to a limited extent they protect the work product of Hagens Berman's *attorneys*, the Pietragallo firm. They are no antidote to Hagens Berman's waiver.

In counsel's initial April 15, 2020 email transmitting the Expert Report to the Special Master, one of the reasons given for disregarding (or, perhaps, rewriting) my Order to distribute a Rule 26(a)(2) report to "all participants" was that the Expert Report "reveals core work product and attorney-client privileged communications." **Ex. 1.** If counsel was referring to *Hagens Berman's* work product, as I think he was, we have some threshold-level confusion that requires discussion:

It is easy, I think, to become confused about the expert discovery/disclosure rules and privileges in the relatively uncommon situation where all actors in the expert witness engagement happen to be lawyers. Instead of a situation where, say, the client is a manufacturer whose lawyer engages an expert accountant to testify about lost business revenues, here we have lawyers thick on the ground. Trial lawyers (the Pietragallo firm) representing other trial lawyers (Hagens Berman) have engaged an unrelated trial lawyer (Mr. Reich) to consider and opine upon the trial lawyer clients' trial-lawyering. It is easy to get the hats mixed up, and it is worth taking a moment to consider how Federal Rules of Civil Procedure 26(a)(2) and 26(b)(3) and (4) work with respect to attorney work product in *all* situations, whether or not the client or the expert is a lawyer.

### 1.    The testifying expert

To start with, it is worth reiterating that the activities and mental processes of a testifying expert witness are about as unprivate as anything in the federal litigation firmament. That has been so as far back, at least, as the 1993 amendments to Rule 26. The general proposition is that every relevant opinion the expert holds, all his reasoning, and every fact or document he has considered in getting to his conclusions must be identified, in writing, in his report. The Federal Rules of Civil Procedure's requirements regarding proposed testifying experts are detailed and demanding. Hagens Berman was obligated to inform the parties of its intention to call Mr. Reich (Fed. R. Civ. P. 26(a)(2)(A)), and accompany that notice with a written report, signed by the expert, that included

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). The attorney-expert has no work product protection with respect to his investigation or his analysis. The limited work product protection provided by Rule 26(b)(4), discussed below, "does not extend to the expert's own development of the opinions to be presented; those are subject to probing in deposition or at trial." Committee Notes on Rules – 2010 Amendment; quoted in, e.g., *Picken v. Louisville Ladder Inc.*, No. 11-13044, 2013 WL

12182395, at *3 (E.D. Mich. Sept. 26, 2013); *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 293 F.R.D. 568, 577 (S.D.N.Y. 2013).

### 2.     The client on whose behalf the expert would testify

In arguing that it was entitled to withhold or selectively redact the Expert Opinion, Hagens Berman points to the selective inclusion and exclusion process that happened in the hearing itself, and the selective redaction and distribution of the 2019 Hearing Materials. That is an unfortunate comparison, because the purpose of the excluding Defendants from the 2017 and portions of the 2019 session, and excluding Plaintiffs from one another's portions of that session, was to preserve work product and attorney-client protection, and the problem here is that Hagens Berman undermined all that hard work when it handed the unedited hearing materials to the expert. As a general proposition, the disclosure of privileged material to a testifying expert waives privilege. *Chevron*, 633 F.3d at 165 (court-appointed expert witness); *United States v. Veolia Environnement N. Am. Operations, Inc.*, No. CV 13-MC-03-LPS, 2013 WL 5779653, at *7 (D. Del. Oct. 25, 2013); *Fialkowski v. Perry*, No. CIV.A. 11-5139, 2012 WL 2527020, at *4 (E.D. Pa. June 29, 2012); *Kontonotas v. Hygrosol Pharm. Corp.*, No. CIV.A. 07-4989, 2009 WL 3719470, at *1-5 (E.D. Pa. Nov. 4, 2009); *Quinn Constr., Inc. v. Skanska USA Bldg., Inc.*, 263 F.R.D. 190, 197 (E.D. Pa. 2009); *Bio-Tech Corp. v. Thermax, Inc.*, 2008 WL 356928, at *2 (E.D. Pa. Feb. 7, 2008); *Synthes Spine Co. v. Walden*, 232 F.R.D. 460, 463 (E.D. Pa. 2005) (collecting cases).

I note that Hagens Berman's waiver problem is not with the fact that Mr. Reich wrote a report, or that he wrote that report under compulsion of an Order from the Special Master. The waiver problem lies in the fact that the firm consciously placed all privileges in harm's way by giving the previously protected information to the expert, and that the expert, in the words of Rule 26(a)(2)(B), "considered" that information in reaching his opinions. And, of course, all of

this must have happened before Hagens Berman told me the expert was going to testify or what he was going to testify about. Thus, if Hagens Berman waived any protection, it did so some time before being ordered to produce and distribute an expert report.

And, like it or not, no waiver bell can be unrung. In *CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176 (D. Del. 2003), the defendant disclosed privileged information to a testifying expert, and later tried to take a Mulligan. After being caught out at the expert's deposition, defendant decided to re-designate the expert as a non-testifying consultant, who would not have to disclose his information. *See* Fed. R. Civ. P. 26(b)(4)(D). District Judge (now Circuit Judge) Jordan, remarking that "a right that is waived is not available to be picked up again as if it were a handy tool," had no difficulty rejecting the attempt:

> It would be manifestly unfair to allow a party to use the privilege to shield information which it had deliberately chosen to use offensively, as Pharmacia did in this instance when it used the allegedly privileged documents to arm its expert for testimony. Hence the truism that a privilege cannot be used as both a shield and a sword. The non-legal equivalent of that truism is equally to the point: "You can't have it both ways." Having chosen to use the information offensively, any privilege Pharmacia might have claimed to defend the information from disclosure is, and remains, waived.

*CP Kelco*, 213 F.R.D. at 179 (citing *United States v. Krasnov*, 143 F. Supp. 184, 191 (E. D. Pa. 1956), *aff'd sub nom. Oppenheimer v. United States*, 355 U.S. 5 (1957)) (other internal citations omitted).

### 3. The trial lawyers who engaged the expert to testify on behalf of the client

Now we come to the only attorneys who have any work product protection under the expert discovery rules, and that protection is narrow and, in the present case, useless to Hagens Berman.

Between 1993 and 2010, a trial lawyer's dealings with the expert she had engaged were no more protected than her client's. In that time there grew up a practice that was both despised and assiduously practiced by all facets of the practicing bar – discovery into trial counsel's *communications* with the expert, and discovery of the drafting and review process that led to the final expert report. Courts had held that even the core work product of the attorney who engaged the expert fell within the definition of "data or other information" that must be disclosed under the then-operative version of Rule 26(a)(2). *See, e.g., Bro-Tech Corp. v. Thermax, Inc.*, No. CIV. 05-CV-2330, 2008 WL 724627 (E.D. Pa. Mar. 17, 2008).

Effective in 2010, Rule 26(b) was amended to provide that *some* communications between trial counsel and the expert were protected from discovery. First, the "data or other information" language in Rule 26(a)(2)(B) gave way to "facts or data considered by the witness in forming" his expert opinion. Second, Rule 26(b)(4) now provides a safe haven for *some* of these trial attorney-expert communications, but it is a very limited one:

> (B) *Trial-Preparation Protection for Draft Reports or Disclosures.*
> Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.
>
> (C) *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses.* Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and [a testifying expert], regardless of the form of the communications, *except to the extent that the communications*:
>
> > (i) relate to compensation for the expert's study or testimony;
> >
> > (ii) *identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed*; or
> >
> > (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(B)-(C) (emphasis added.)  First, the new provision deals only with "communications between the party's attorney [the Pietragallo lawyers] and the expert.  It doesn't pretend to address the voluminous transcripts and exhibits Mr. Reich says he considered, nor does it speak to communications (if any) between Hagens Berman and the expert.  The Comments to the 2010 Amendment make that clear:  "The protection [of work product] is limited to communications between an expert witness required to provide a report under Rule 26(a)(2)(B) [*e.g.*, Mr. Reich] and the attorney [the Pietragallo firm] for the party on whose behalf the witness will be testifying [Hagens Berman] . . . ."  Committee Notes on Rules – 2010 Amendment.[13]

One of the seminal decisions interpreting the 2010 Amendment, Judge DuBois's opinion in *Fialkowski v. Perry*, 2012 WL 2527020, also involved a lawyer-client.  A lawyer, Ms. Fialkowski, accused her former partners of cheating her and pushing her out of their firm, so she hired a lawyer and sued them.  Her lawyer then engaged an expert – an accountant – to testify on his lawyer-client's behalf.  At deposition, the expert disclosed that he had been given documents prepared by Ms. Fialkowski – "spreadsheets and document analysis [that] Plaintiff [prepared] from QuickBooks records, tax returns, and [d]iscovery produced by Defendant," notably, "a thirty-nine-page document that contains plaintiff's own 'explanation and assessment of . . . discovery documents and how they relate to the claims [she has] asserted and the various

---

[13] I suppose it might be argued that Hagens Berman is not technically "a party," although it is the movant on the withdrawal motions, and certainly has an interest, to say the least, in the outcome of the accusations made by Ms. Sampson and the confessed conduct of its member Mr. Weaver.  In any event, a conclusion that Rule 26(b)(4) did not apply to participant Hagens Berman would simply remove whatever limited protection the rule might otherwise afford the Pietragallo firm's work product.  Either way, the information would be unprotected under Rule 26.  *See, e.g., Galambus v. Consol. Freightways Corp.,* 64 F.R.D. 468, 473 (N.D. Ind. 1974); 8 Wright, Miller & Marcus, *Federal Prac. and Proc.: Civil 2d* § 2024 at 354.

defenses raised by defendants." *Id.* at *1. Obviously, these lawyer-prepared documents bristled with lawyerly theories and mental impressions, and would surely have been afforded work product treatment outside the expert discovery context.[14] But they were the theories and impressions of the *client-lawyer*, not the *trial lawyer* and, critically, they had been considered by the expert. As Judge DuBois stressed:

> The requested materials contain "factual ingredients" and disclosure does not implicate "theories or mental impressions of counsel" *because plaintiff, not plaintiff's attorney, prepared them.* Thus, the 2010 Amendments provide no basis for prohibiting discovery of the requested materials.

*Fialkowski*, 2012 WL 2527020, at *4 (emphasis added). *Accord, e.g., Ansell Healthcare Prod. LLC v. Reckitt Benckiser LLC*, No. 15-CV-915-RGA, 2017 WL 6328149, at *5 (D. Del. Dec. 11, 2017) (damages analysis prepared for counsel must be produced); *Veolia Environnement*, 2013 WL 5779653, at *7 ("[T]here is no reason that communications from someone **other than** the party's attorney that likewise identify such 'facts or data' should be protected from disclosure.") (emphasis in original).

I am unaware of anything in the Expert Opinion, or even in the materials Mr. Reich says he considered or relied upon, that touches on the confidential litigation strategy or mental impressions of the Pietragallo firm lawyers in pursuing Hagens Berman's withdrawal motions, and the Expert Report certainly does not refer to any direct communications with the Pietragallo firm lawyers that Mr. Reich considered in forming his opinion.

---

[14] *Cf., e.g., Flynn v. Mfrs. & Traders Tr. Co.*, No. 17-CV-04806-WB, 2019 WL 414912, at *2, *5 (E.D. Pa. Jan. 31, 2019) (lay "process improvement manager's" computations were attorney work product)

B.    **The unworkability of an *in camera* expert investigation, report, discovery, and testimony in this matter**

As mentioned earlier, Hagens Berman has argued that its selective distribution of the Expert Report (and, by inference, its wholesale disclosure of privileged information to the expert) was based on an assumption that the would allow the expert to testify only in the presence of certain people, and that different audiences would see and hear different parts (or no part at all) of his expert opinion.

Back in the period before complications like evidence-tampering forced their way onto the menu, I certainly did intend that the five withdrawal motions would be treated as five separate hearings. I attempted to make it clear that the inquiry would not focus on the generalities, *e.g.*, the investigation and reasoning supporting a theory that 50-year-old personal injury claims could be conscionably pursued on behalf of some 52 plaintiffs, and rather that I needed to know what Hagens Berman had learned about these individual Plaintiffs' etiologies. I had to know what they had learned, when they had learned it, and why it had taken 50 years or more to learn it:

> With respect to each of the five Motions, I will expect the Hagens Berman attorney who prepared and executed the Verification to the pertinent Complaint to attend in person. Similarly, the Hagens Berman attorney or attorneys who are directly knowledgeable respecting the particular Plaintiff's situation – the preparation and prosecution of her claims, the pertinent discovery, the decision by Hagens Berman to seek to withdraw and the reasons for that decision, as well as any discussions between Hagens Berman and the particular Plaintiff with respect to the proposed withdrawal – should attend.
>
> With respect to each Motion, I request that the Plaintiff who is named in the Motion also attend, either telephonically, by video, or in person. *To be clear: This will not be a single hearing on all five Motions, but five separate hearings, each of which will delve into the facts and professional considerations surrounding a particular Hagens Berman Motion.* To preserve privilege, no Plaintiff will be permitted to hear another Plaintiff's *in camera* evidence, nor will

> any Plaintiff be entitled to hear Hagens Berman's *in camera*
> evidence regarding any of the Motions other than the one to which
> she is Respondent.

ECF 562 at 2-3 (emphasis added).  At the actual hearing, Hagens Berman requested and I agreed to a modified first step in the hearing, in which information considered pertinent to all five Plaintiffs was presented in their presence.  But that evidence, as it turned out, was significantly different from the "what, when, and why so late" information for which I had been hoping.  On the one hand, there was precious little information about the failure to learn – before suing or during the two or three-year post-complaint period before moving – the information that was now triggering "professional considerations."  On the other hand (as discussed above), the early testimony was not just about facts pertinent to one or all of these five Plaintiffs but, instead, about the manner in which Hagens Berman and its predecessor counsel educated themselves and went forward with litigation on behalf of all 52 of its initial Plaintiffs.  It was (and the Expert Report is) about counsel's conscious decision to commence lawsuits without first ferreting out medical records, and about late-in-the-game scientific examination into the Plaintiffs' specific prenatal injuries.

In the Expert Report, Mr. Reich states three propositions, and I presume that Hagens Berman intends that I will be persuaded to find (or recommend that the Court find):  First, that Hagens Berman had a good faith basis for bringing these consolidated cases on behalf of "its clients starting in 2011"; second, that it had such a good faith basis "to continue to prosecute them as long as it did"; and finally, "that it was appropriate for Hagens Berman to seek leave to withdraw from representing these plaintiffs when it did due to information obtained during

discovery." Expert Report at 13.[15] At least the first two of these topics as discussed by Mr. Reich, and probably the third, have obvious relevance to topics brought into the hearing before me as a result of the evidence-tampering: Plaintiff Sampson's allegations of misconduct by Hagens Berman and Ms. Reeves; and, indeed, the very broad sweep of Hagens Berman's case-in-chief and the expert's opining regarding the total roster of these consolidated claims and their handling by Hagens Berman. If – as I understand Hagens Berman to be proposing – I were to accept (or recommend that the District Court accept) the expert witness's conclusion that "Hagens Berman had a good faith basis to bring lawsuits on behalf of its clients starting in 2011" (Expert Report at 13), and also had a good faith basis "to continue prosecuting them as long as it did," without having afforded Defendants an opportunity to cross-examine Mr. Reich on those topics, wouldn't that be unfair? It is difficult to speculate about how that finding would affect, *e.g.*, a Defendant's motion for sanctions regarding the prosecution of these or other Plaintiffs' claims, or a Plaintiff's claim (like Ms. Sampson's) that she was lured into bringing a case that has been the bane of her existence for the past several years. The fact is that most of Mr. Reich's discussion of the history of the litigation is, like the testimony at the hearing, quite general. He discusses, for the most part, the entire body of Plaintiffs' cases (Expert Report at 3-5), and the general range of activities by a group of lawyers, not just Hagens Berman. When it comes to these five Plaintiffs (*id.* at 11-12), he provides precious little information to demonstrate that bringing these cases was justified in the first place, and no information to explain why learning the facts about a Plaintiff's condition depended upon opponent-driven "discovery" and was not the product of the firm's own pre-complaint or early investigation.

---

[15] It is difficult to identify a single non-Hagens Berman participant (other than, perhaps, Ms. Reeves) who would not take strenuous issue with one aspect or the other of that opinion.

Hagens Berman's decision to put on a case that focused – and more particularly, to put on an *expert* case that focused – so heavily on its entire body of claims and clients, created a situation in which it would be unfair to exclude Defendants from the courtroom if and when Mr. Reich testifies, or to preclude their deposing Mr. Reich if they so choose.

## C.      Selective waiver

We have spoken throughout of Hagens Berman's attempted selective distribution of the Expert Report.  What should be clear from this is that Hagens Berman also hopes to effect something that is forbidden in this Circuit, a selective waiver of privilege.

In this Circuit, it was early decided that holders of privileges would not be permitted to waive them selectively, withholding information from one audience on grounds of privilege after disclosing it to another.  In *Westinghouse*, the Court held that Westinghouse's voluntary disclosure of privileged documents to the Department of Justice and the Securities and Exchange Commission waived privilege for all purposes with respect to those documents, even though Westinghouse reasonably expected that those agencies would keep the information confidential:

> Even though the DOJ apparently agreed not to disclose the information, under traditional waiver doctrine a voluntary disclosure to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else.  See, for example, [*United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990)] ("The attorney-client privilege does not apply to communications that are intended to be disclosed to third parties *or that in fact are so disclosed*.") (emphasis added).  See also 8 Wigmore, *Evidence*, § 2327 at 636; Note, 36 Stan. L. Rev. at 792.  We also note that the agreement between Westinghouse and the DOJ preserved Westinghouse's right to invoke the attorney-client privilege only as to the DOJ – and does not appear in any way to have purported to preserve Westinghouse's right to invoke the privilege against a different entity in an unrelated civil proceeding such as the instant case.

951 F.2d at 1427. Presumably, Hagens Berman expected that the expert would not republish the information he was given, except as directed by Hagens Berman. Such direction is contrary to the policies behind the two privileges. *See Chevron*, 633 F.3d at 164-65.

### D.     Attorney-client and work product:  The differing waiver tests

The tests for waiver of work product protection and waiver of the attorney-client privilege are not the same:

> [T]he courts recognize that because the attorney-client privilege serves to protect the confidentiality of communications between clients and their attorneys, "disclosure to a third party waives the attorney-client privilege unless the disclosure is necessary to further the goal of enabling the client to seek informed legal assistance."
>
> On the other hand, the work-product doctrine protects an attorney's work from falling into the hands of an adversary, and so "disclosure to a third party does not necessarily waive the protection of the work-product doctrine." Rather, the purpose behind the work-product doctrine "requires [a court] to distinguish between disclosures to adversaries and disclosures to non-adversaries[,]" and it is only in cases in which the material is disclosed in a manner inconsistent with keeping it from an adversary that the work-product doctrine is waived.

*Id.* at 165 (quoting *Westinghouse*, 951 F.2d at 1428).

It should be noted, at the threshold, that the test of work product waiver is not an entirely subjective one; the disclosing party need not *intend* to forfeit work product protection. We assume that the parties and attorneys who disclosed work product documents in the many cases we have cited[16] thought they could still withhold them from their adversaries; they just lost that argument when the time came.

---

[16] *See, e.g., Chevron*, 633 F.3d at 165; *Veolia Environnement*, 2013 WL 5779653, at *7; *Fialkowski*, 2012 WL 2527020, at *4; *Kontonotas*, 2009 WL 3719470, at *1-5; *Quinn Constr.*, 263 F.R.D. at 197; *Bio-Tech Corp.*, 2008 WL 356928, at *2; *Synthes*, 232 F.R.D. at 463 (collecting cases); *CP Kelco*, 213 F.R.D. 176.

Here, Hagens Berman and its counsel gave the entirety of a much-protected cache of facts and data – hearing testimony and associated exhibits – to an independent non-participant, an expert, in the hope of deploying that information to persuade him that Hagens Berman had behaved and was behaving appropriately under prevailing standards of practice and (I presume) that Hagens Berman should be permitted to withdraw its appearances with respect to the five Plaintiffs.  Hagens Berman and its counsel are charged with knowledge of the rules:  An expert has to prepare a report.  The report has to be disclosed to all the parties, some of whom are, in the nature of things, adverse to Hagens Berman.  The disclosed report must identify, *inter alia,* all facts or data the expert has considered.  And those facts and data are readily discoverable.

The Third Circuit's decision in *Chevron* had much in common with the present case, although that decision involved a court-appointed rather than a party-engaged expert.  In environmental tort litigation in Ecuador, the Ecuadorian court had appointed an environmental engineer and geologist, one Cabrera, to serve as a court-appointed damages expert.  From time to time, Cabrera requested documents relevant to the dispute; defendant Chevron did not supply documents, but plaintiff Ecuadorian citizens did.

In related 28 U.S.C. § 1782 discovery proceedings in the District of New Jersey, the issue was whether the plaintiffs' disclosure of the documents to Cabrera waived work product protection, so that Chevron could discover the documents from their authors, plaintiffs' New Jersey environmental consultants, and from plaintiffs themselves.  The Third Circuit had no difficulty affirming the district court's decision that work product protection had been waived:

> [W]e can discern no reason for appellants' submission of the
> documents to Cabrera other than for him to consider those
> documents to advance appellants' hope that Cabrera's final global
> damages assessment report would reflect the materials and
> conclusions in the documents.  Indeed, it is quite clear that
> appellants intended that by submitting the documents to Cabrera

they would place him in a position to serve as a conduit to transmit the documents to Chevron *because they hoped that Cabrera would agree with the documents' assessment of damages and thus would incorporate the documents, or at least the conclusions in them, into his report.* Consequently, we are satisfied that the documents were submitted to Cabrera in a manner inconsistent with keeping them from Chevron, and therefore the work-product doctrine and the attorney-client privilege were waived as to the documents submitted to Cabrera.

*Chevron*, 633 F.3d at 165 (emphasis added). In the present case, of course, it is the Special Master or the District Judge that Hagens Berman hoped to persuade through the intercession of the expert.

Like the *Chevron* and *CP Kelco* courts, I conclude that Hagens Berman's work product protection has been waived by its disclosure to the expert.

### E.   Waiver of attorney-client privilege

As a general rule, the disclosure of a privileged attorney-client communication to a testifying expert waives the privilege. Any disclosure does that "unless the disclosure is necessary to further the goal of enabling the client to seek informed legal assistance." *Chevron*, 633 F.3d at 165 (citation omitted). Although I see little in the Expert Report itself that necessarily reflects actual attorney-client communications between Plaintiffs and Hagens Berman lawyers (as distinguished from facts that would generally be discoverable), there are a handful of such statements, and I have personal knowledge that the hearing materials do contain testimony regarding conversations between attorney and client made with the expectation of confidentiality and seeking or giving legal advice. The case law tells us that Rule 26(a)(2)(B) – specifically, its requirement that facts and data considered by the expert be disclosed – "trumps" the attorney-client privilege. *Fialkowski*, 2012 WL 2527020, at *4; *Bio-Tech*, 2008 WL 356928 at *2; *Synthes*, 232 F.R.D. at 463; *Veolia Environnement*, 2013 WL 5779653, at *7. I nevertheless conclude that the Plaintiffs' attorney-client privileges have not been vitiated by

Hagens Berman's disclosures to the expert, because the disclosures were not authorized by the client Plaintiffs. This conclusion turns on homely common law concepts of agency, authorization, and apparent authority.

Usually, a lawyer's disclosure of an attorney-client privileged communication is the death knell of the privilege. But not always, as explained by the American Law Institute:

> § 79 Subsequent Disclosure: The attorney-client privilege is waived if the client, the client's lawyer, or another authorized agent of the client voluntarily discloses the communication in a nonprivileged communication.

Restatement (Third) of the Law Governing Lawyers. The Comments to § 79 speak volumes:

> c. Authorized disclosure by a lawyer or other agent. The privilege is waived if the client's lawyer or another authorized agent of the client discloses the communication acting under actual or apparent authority. *A lawyer generally has implied authority to disclose confidential client communications in the course of representing a client . . .*
>
> *Unauthorized disclosure by a lawyer not in pursuit of the client's interests does not constitute waiver under this Section.* For example, disclosure of a client's confidential information to prevent a threat to the life or safety of another or to prevent a client crime or fraud does not constitute waiver within the meaning of this Section . . . ."

*Id.,* Comment c (emphasis added). From the comment, we observe that for a lawyer's disclosure *not* to constitute a waiver, the disclosure must (i) be unauthorized (*i.e.,* not pursuant to actual authority, including express or implied authority, or apparent authority); and (ii) not be in pursuit of the client's interests. There is no indication Hagens Berman was acting pursuant to actual or apparent authority from its clients, and it clearly was not pursuing their interests, when it handed the hearing materials over to the expert – rather, it was trying to *offload* five clients.

Equally instructive is the ALI's position that a disclosure of a client's privileged information without her consent can sometimes be appropriate and justified, even necessary.

*while still being unauthorized.* The cases seem to agree. *See Purcell v. Dist. Att'y*, 676 N.E.2d 436 (Mass. 1997) (an attorney who reported his client's threat to commit arson could not be made to testify at the criminal trial because the disclosure had been proper but unauthorized). *Compare In re Original Grand Jury Investigation*, No. L-98-1146, 1999 WL 518837, at *2 (Ohio Ct. App. July 23, 1999), *aff'd*, 733 N.E.2d 1135 (Ohio 2000) (acknowledging *Purcell* but requiring the attorney to comply with a grand jury subpoena where the evidence sought was physical, and not the product of an attorney-client communication).

Mary Sells, John Marshall, and the other Plaintiffs were entitled to rely on the sanctity of their conversations with their lawyers. Their attorney-client privilege survives.

## V.    Conclusion

Hagens Berman's work product protection has been waived by the disclosure of the Hearing Materials to the testifying expert, but the five Plaintiffs' attorney-client privilege was not. By my Order of May 18, 2021 (ECF 742), I redacted from the Expert Report the handful of passages that disclose, or likely disclose, privileged attorney-client communications – the disclosure of which in the *in camera* hearing, whether proper or not, was unauthorized by Hagens Berman's clients and not in pursuit of their interests (ECF 743) – and have distributed the redacted Expert Report to the parties and other participants.


May 20, 2021                                    /s/ William T. Hangley
                                               WILLIAM T. HANGLEY
                                               SPECIAL DISCOVERY MASTER

# Ex. 1

| From: | Douglas E. Roberts |
|---|---|
| To: | Hangley, William T. |
| Cc: | Gaetan J. Alfano; Ferrari, Kim T; Weiss, Sharon A.; Rice, Cary L. |
| Subject: | Johnson v. SmithKline Beecham -- Hagens Berman expert report |
| Date: | Wednesday, April 15, 2020 4:34:03 PM |
| Attachments: | image840110.png |
| | image157497.png |
| | Redactions from A. Reich Expert Opinion Letter(5201440.1).pdf |
| | A. Reich expert opinion letter (unredacted)(5197807.1).pdf |

Dear Special Master Hangley,

We hope this email finds you safe and in good health. On behalf of Hagens Berman, and pursuant to your Order dated March 16, 2020 (Dkt. # 707), I write to provide you with a copy of the firm's expert report concerning its motions to withdraw as counsel for Richard Anderson, Terrie Bolton, John Marshall, Jose Navamuel, and Mary Sells.

Also pursuant to your order, we have served copies on Messrs. Anderson, Marshall, and Navamuel; Ms. Bolton (through counsel); and Ms. Sells (through counsel). Consistent with your prior rulings on privilege, the report to provided to each plaintiff was redacted to conceal privileged information regarding the other plaintiffs. Additionally, we have served copies on Diana Cabcabin and Carolyn Sampson, through their counsel, from which privileged information regarding the five plaintiffs subject to motions to withdraw has been redacted. The attached chart documents the redactions from all of these reports.

Finally, we have provided unredacted copies to counsel for Tyler Weaver and Kay Reeves. We have not provided copies to the pharmaceutical defendants because the report: (1) does not concern the portions of the hearings to which they have been granted access; (2) is based on testimony from which they were excluded due to privilege concerns, and (3) reveals core work product and attorney-client privileged communications.

Please let us know if you have any questions or concerns.

Respectfully Submitted,

**Douglas E. Roberts, Esquire**
Pietragallo Gordon Alfano Bosick & Raspanti, LLP
1818 Market Street, Suite 3402
Philadelphia,PA19103
Office: (215) 988-1431|Fax: (215) 754-5195
DER@Pietragallo.com|BIO|vCard

Connect with me on LinkedIn:

This electronic mail message, and any attachments transmitted with it, contain confidential information, intended only for the named addressee(s). If you are not the intended recipient or the person responsible for delivering this e-mail to the intended recipient, you are hereby notified that any use, distribution, copying or disclosure of this communication is strictly prohibited. If you have received this e-mail in error, please immediately notify Pietragallo Gordon Alfano Bosick & Raspanti, LLP by reply e-mail, and delete all copies of this communication from your computer and network. Thank you.

**In consideration of the health and welfare of our employees, clients, friends, and the community, until further notice all office locations of Pietragallo Gordon Alfano Bosick & Raspanti, LLP are closed, but our business will remain open and active by way of fully-**

operative telework arrangements.